546 A.2d 26

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Manuel GONZALEZ, Appellant.**

Supreme Court of Pennsylvania.

Argued April 13, 1988.

Decided July 28, 1988.

<hr/>

118

John W. Packel, Chief, Appeals Div., Peter Rosalsky, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., George Leone, for appellee.

Stuart Suss, Philadelphia, for amicus curiae—Pennsylvania Dist. Atty.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

LARSEN, Justice.

In this appeal, the appellant Manuel Gonzalez presents two questions: (I) Did the lower court err in permitting a police officer to testify as an expert and "relate back" appellant's blood alcohol level to the time of a fatal intersection accident in which appellant was involved, based upon the results of a blood alcohol test given appellant approximately three hours after the accident? and, (II) Did the lower court err in admitting into evidence a statement made by the appellant to police officers at the scene of the accident without *Miranda* warnings being given?

At approximately 12:40 a.m. in the early morning of July 19, 1985, the appellant was operating his green Chevrolet automobile in a southerly direction on Franklin Street in the City of Philadelphia. Riding as passengers in the automobile with him were two of his friends, Wilfredo Colon and Miguel Rivera. The appellant ran through a stop sign at forty to fifty m.p.h. at the intersection of Franklin Street and Clearfield Streets. As the appellant proceeded south on Franklin toward the next intersection, both of his passengers told him to slow down. The appellant ignored their remarks about the speed of the car and ran through a

second stop sign, this one at the intersection of Franklin Street and Indiana Avenue. He violently struck the side of a Datsun automobile which was proceeding on Indiana Avenue through that intersection.

At the time of the accident, Philadelphia police officers were in the neighborhood on an unrelated matter and heard the noise generated by the force of the collision. The officers drove to the intersection of Franklin Street and Indiana Avenue where they observed a heavily damaged Datsun containing two unconscious male occupants and a green Chevrolet damaged in the front. The appellant was sitting behind the steering wheel of the green Chevrolet. Because of the obvious injuries to the occupants of the Datsun and the fact that they would have to be forcibly removed from the twisted vehicle, the investigating officers radioed for rescue personnel. When the rescue personnel arrived on the scene, they immediately went to work extricating the injured young men from the Datsun. Both of the occupants of the Datsun eventually died from the extensive injuries received in the accident.

When the rescue personnel began their work the officers went over to the Chevrolet and there observed the appellant Gonzalez still sitting behind the steering wheel. The officers asked the appellant if he was hurt. The appellant responded that he was not injured. The officers then requested that he step out of the vehicle which he did. The officers asked the appellant what happened. The appellant replied that he was driving south on Franklin Street, went through a stop sign and struck the other car. (N.T., p. 12.) As the appellant gave this information to the officers, they noticed a strong odor of alcohol emanating from the appellant. The officers noticed that appellant's eyes were watery and blood shot; that his conduct was stuporous and sleepy; and, he was unsteady and swaying. (N.T., p. 13.)

The officers asked the appellant for his operator's license and registration card. Appellant could produce neither. He did hand to one of the officers a letter from the Bureau of Motor Vehicles which indicated that appellant's driving

privileges had been restored about a week earlier. The appellant was placed under arrest shortly after one o'clock in the morning. He was transported to the district station house and then eventually to the Police Administration Building.

At the Police Administration Building appellant was observed for twenty minutes and then given a breathalyzer test. It was 3:24 a.m. when the breath test was administered. Two samples were taken. The first sample registered a reading of .082 percent. The second sample registered a result of .087 percent. Next, the appellant was taken across the street to Metropolitan Hospital where he gave his consent to a blood test. Blood samples were withdrawn from the appellant at 3:44 a.m. Tests on the blood samples revealed a blood alcohol content of .09 percent.

The appellant was charged with and eventually tried for driving under the influence of alcohol or a controlled substance, two counts of involuntary manslaughter, two counts of homicide by vehicle, and two counts of homicide by vehicle while driving under the influence. At trial, the prosecution called as an expert witness, Corporal Thomas McGonigal, a police veteran of twenty-eight years. Corporal McGonigal was called to give testimony "relating back" the blood alcohol of the appellant to the time of the accident.

Over the objection of the appellant, Corporal McGonigal was qualified as an expert. Over further objection of appellant, Corporal McGonigal testified concerning the absorption of alcohol into the human blood stream and the elimination rate of alcohol from the blood stream. He concluded by opining that based upon the appellant's blood alcohol of .09 percent at 3:44 a.m., and assuming that his blood alcohol percentage was declining during the three hours that elapsed from the time of the accident to the time of the test, the appellant's blood alcohol at the time of the accident could have been .125 percent.

The trial judge, sitting without a jury, found the appellant guilty of driving under the influence, guilty of two counts of involuntary manslaughter, and guilty of two counts of homicide by vehicle while driving under the influence. Appellant was found not guilty of homicide by vehicle. On the two counts of homicide by vehicle while driving under the influence, appellant was sentenced to a term of 3 to 6 years imprisonment on each count, to run concurrently. On the two counts of involuntary manslaughter, appellant was sentenced to a 2½ to 5 years term of imprisonment on each count, to run concurrently with each other and with the sentence for homicide by vehicle while driving under the influence. Sentence was suspended on the charge of driving under the influence. On appeal to the Superior Court, judgments of sentence for involuntary manslaughter were vacated.[1] The judgments of sentence for homicide by vehicle while driving under the influence were affirmed. The appellant Manuel Gonzalez petitioned this Court for allowance of appeal which we granted.

## I.

 Initially, we consider the appellant's argument that the lower court erred in admitting into evidence an extrajudicial statement made by appellant without Miranda[2] warnings being given. Specifically, appellant complains that his response to the questions put to him by the police officers at the scene of the accident should have been suppressed because the officers failed to give the required Miranda warnings prior to the questions.

At the scene of the accident, after the rescue personnel arrived and began work on extricating the victims from the

1. The Superior Court *sua sponte* considered the legality of the sentence imposed on each count of involuntary manslaughter and ruled that for purposes of sentencing, the offense of homicide by vehicle while driving under the influence merged with involuntary manslaughter. The court, therefore, vacated the separate sentences imposed for involuntary manslaughter. Since, in this appeal, no issue is raised concerning the Superior Court's vacating these sentences, we will not consider this matter.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

mangled Datsun, the investigating officers directed their attention to the appellant and asked him if he was hurt. The appellant responded that he was not injured. The officers then asked him what happened. Appellant answered by stating that he was driving south on Franklin Street, that he went through a stop sign and struck the other automobile. The trial court, citing *Commonwealth v. Kloch*, 230 Pa.Super. 563, 327 A.2d 375 (1974), found that under the circumstances of this case, the officers were conducting a general on-the-scene questioning to determine whether there was a crime and *Miranda* warnings were not required. The Superior Court, concurred with the conclusion of the trial court. We agree that the statement the appellant gave at the scene of the accident is admissible.

The officers came upon the scene of an automobile accident they did not witness. The first automobile they approached had two unconscious occupants who obviously were injured and needed help. They immediately summoned rescue assistance for those two injured victims. Once the rescue personnel arrived and commenced their work, the officers went to the next vehicle where they found the appellant behind the steering wheel. He was the only one known to be involved in the accident who was conscious and able to talk to them. The officers made two logical inquiries of the appellant: Are you hurt and, what happened?

Under *Miranda v. Arizona, supra.* statements of the accused arising from "custodial interrogation" are inadmissible unless the prosecution shows that the procedural safeguards required by *Miranda* were afforded the accused. "By custodial interrogation we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* 384 U.S. at 444, 86 S.Ct. at 1612.

> "This test for 'custodial interrogation' has been consistently applied in this Commonwealth, with a nuance added by subsequent developments.

> [T]his jurisdiction's test of 'custodial interrogation' examines more than actual deprivation of freedom. Pennsylvania's test for custodial interrogation is whether the suspect is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by said interrogation. . . .

*Commonwealth v. Meyer*, 488 Pa. 297, 306, 412 A.2d 517, 521 (1980) (numerous citation omitted); *Commonwealth v. Chacko*, 500 Pa. 571, 577, 459 A.2d 311, 314 (1983)." *Commonwealth v. Ziegler*, 503 Pa. 555, 563, 470 A.2d 56, 59, 60 (1981) (Concurring Opinion by Larsen, J.)

Although the appellant had a duty under the Motor Vehicle Code to stay at the scene of the accident and identify himself and his vehicle, and exhibit his operator's license and proof of insurance (75 Pa.C.S.A. §§ 3742, 3743 and 3744), he was not under arrest, nor was he in custody. His freedom was only restricted to the extent of his statutory obligation to stay and provide the required information. When the police officers approached the appellant at the accident scene and asked him if he was hurt and what had happened, appellant was not in custody, nor could he have reasonably believed he was in custody for purposes of *Miranda*. At that time, the appellant was not under arrest and he has not shown that he was subjected to restraints comparable to those associated with an arrest. The appellant was asked a minimal number of questions at the scene of an accident on a public street. Those questions cannot be characterized as "custodial interrogation." *See Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). It follows that the statement made by appellant in response to the police questioning was admissible in evidence, and the trial court did not err in receiving it.

## II.

Next, we consider the appellant's argument that the court erred in accepting the prosecution's witness Corporal McGo-

nigal as an expert, and admitting his testimony, which concerned "relating back" the percentage of alcohol in appellant's blood to the time of the accident.

Section 3731(a)(1) and (4) of the Motor Vehicle Code provides:

### § 3731. Driving under influence of alcohol or controlled substance

(a) Offense defined.—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:

(1) under the influence of alcohol to a degree which renders the person incapable of safe driving;

(4) the amount of alcohol by weight in the blood of the person is 0.10% or greater.

75 Pa.C.S.A. § 3731(a)(1) and (4).

Section 1547 of the Motor Vehicle Code provides, in relevant part:

### § 1547. Chemical testing to determine amount of alcohol or controlled substance

(a) General rule.—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both; or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

(c) Test results admissible in evidence.—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3731 or

any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

(d) **Presumptions from amount of alcohol.**—If chemical testing of a person's breath, blood or urine shows:

(1) That the amount of alcohol by weight in the blood of the person tested is 0.05% or less, it shall be presumed that the person tested was not under influence of alcohol and the person shall not be charged with any violation under section 3731(a)(1) or (4) (relating to driving under influence of alcohol or controlled substance), or if the person was so charged prior to the test, the charge shall be void ab initio. This fact shall not give rise to any presumption concerning a violation of section 3731(a)(2) or (3).

(2) That the amount of alcohol by weight in the blood of the person tested is in excess of 0.05% but less than 0.10%, this fact shall not give rise to any presumption that the person tested was or was not under the influence of alcohol, but this fact may be considered with other competent evidence in determining whether the person was or was not under the influence of alcohol.

(3) That the amount of alcohol by weight in the blood of the person tested is 0.10% or more, this fact may be introduced into evidence if the person is charged with violating section 3731.

75 Pa.C.S.A. § 1547.

Under the statutory scheme relating to "drunk driving," the legislature declared it an offense to drive a motor vehicle while under the influence of alcohol so as to be incapable of safe driving. 75 Pa.C.S.A. § 3731(a)(1). No specific level of blood alcohol is required to establish an offense under this section as long as the percentage of alcohol exceeds .05 percent. 75 Pa.C.S.A. § 1547(d). When the driver tested has a blood alcohol content of .10 percent

or more, that fact may be introduced into evidence in any proceeding to prove a violation of Section 3731(a)(1)—driving under the influence of alcohol. 75 Pa.C.S.A. § 1547(d). In addition, the legislature made it a *per se* violation to drive a motor vehicle while having a blood alcohol content of .10 percent or more. 75 Pa.C.S.A. § 3731(a)(4).[3] The appellant in this case was charged under both § 3731(a)(1) and § 3731(a)(4).

As part of the statutory enforcement plan, the legislature authorized the use of chemical tests of the breath, blood and urine to determine the blood alcohol level of drivers who are reasonably suspected of being under the influence. 75 Pa.C.S.A. § 1547(a). The legislature provided that the results of such tests are admissible into evidence in any proceeding where the defendant is charged with driving under the influence. 75 Pa.C.S.A. § 1547(c). In accordance with the statute, the appellants' breath and blood were tested and the results of those tests were introduced into evidence.[4]

The appellant argues that the trial court erred in permitting Corporal McGonigal to testify as to what the appellant's blood alcohol level was at the time of the fatal accident based upon the results of a chemical test of his blood administered three hours after the accident. The appellant contends that it was error to admit such testimony when the "related back" blood alcohol level was based upon a single blood test taken more than thirty minutes after the accident. In addition, appellant argues that there are no facts in evidence to support the assumption made by the witness that the appellant's blood alcohol level had peaked and was declining both at the time of the accident and at the time of the test.

3. "It is now virtually universally accepted that a person with a [blood alcohol percentage] of .10 should not be driving." *Commonwealth v. Mikulan*, 504 Pa. 244, 249, 470 A.2d 1339, 1341 (1983).

4. Appellant tested twice on the breathalyzer, the first sample showed a blood alcohol content of .082, the second .087. Shortly thereafter a chemical test of the blood indicated a blood alcohol percentage of .09. All three of these readings were part of the evidence against the appellant.

## A.

### Qualification of Expert

█ The prosecution called Corporal McGonigal to testify as an expert concerning the absorption and elimination of ethyl alcohol into and from the human blood stream. The appellant objected to Corporal McGonigal giving such testimony contending that he was being called to give a medical opinion which is far afield from his recognized expertise in the operation and maintenance of breath testing machines. Over appellant's objections, the trial court ruled that Corporal McGonigal was qualified as an expert and thus permitted him to testify.

In Pennsylvania, a liberal standard for the qualification of an expert prevails. Generally, "if a witness has any reasonable pretension to specialized knowledge on the subject matter under investigation he may testify and the weight to be given to his evidence is for the [fact finder]." *Kuisis v. Baldwin–Lima–Hamilton Corp.*, 457 Pa. 321, 338, 319 A.2d 914, 924 (1974); *Moodie v. Westinghouse Electric Corp.*, 367 Pa. 493, 501, 80 A.2d 734, 738 (1951). The witness, Corporal McGonigal, is a veteran police officer of 28 years. He is a qualified operator of the breathalyzer machine. He has worked with breath testing equipment in the Accident Investigation Division of the Philadelphia Police Department since 1969. Prior to that he worked in the police laboratory. Corporal McGonigal took courses in pharmacology and toxicology of alcohol at Indiana University in Bloomington, Indiana and at Wesson Academy in Springfield, Massachusetts. At Indiana University he studied under Dr. Borkenstien, the inventor of breath testing equipment. He is qualified as a technical instructor in chemical testing. Additionally, he has previously testified in court proceedings as an expert in matters involving alcohol a total of four to five hundred times. In at least one hundred of those occasions, he testified as to the absorption of alcohol into the blood stream and the elimination of alcohol from the blood stream. Based upon his background, training and experience, Corporal McGonigal

has reasonable pretension to specialized knowledge on the subject matter under inquiry and was properly qualified as an expert.

## B.

### Testimony of Expert

■ Corporal McGonigal was questioned and testified as follows:

Q. Presuming a situation that blood is extracted from an individual at 0344 hours, that would be 3:44 a.m., and that the blood was tested to contain .09 percent alcohol per one hundred milliliters of blood, presuming further that the individual from whom the blood was taken did not and could not consume additional alcoholic beverages from a point in time at approximately 12:40 a.m. through 3:44 a.m. when the blood was withdrawn, can you state based on the elimination rate for alcohol from the human blood stream to a reasonable degree of certainty the amount of blood alcohol present at 12:40 a.m.

THE WITNESS: It's very difficult, counselor. You have to known when he consumed his last drink. You cannot just—you have to remember the thirty to ninety minute interval that you have. So you must know when he consumed his last alcoholic beverages. You have to know he's reached his peak and on his way down at a specific time. You can only take the .015 percent. And if it's three hours after the incident occurred, using the assumption that the man was at his peak prior to whatever incident it was, it was coming down at a point of .015 percent per hour for three hours. And if you took that and put it on to a reading that you got of the Breathalyzer or blood, if it was a .09, you would have a possible .125 percent at three hours.

Q. Now, corporal, presume a situation that the individual subject to the testing at 3:44 a.m. did not and could not have consumed any alcoholic beverages from a point of 12:40 a.m. through to 3:44 a.m., is that what you're basing that opinion on?

A. Yes, sir. You would have a three hour span you know he had no alcoholic beverage consumed at that time.

Q. Would that opinion that you have stated for Judge Stout be reenforced by the presumed fact that the person so tested was not in a position to have consumed any alcohol from 12:20 a.m. through to 3:44 a.m.

A. You would have a longer time span in which you could be certain that he had not consumed any alcoholic beverages. It would give you a longer time to know that he had reached his peak and was on his way down. He was definitely on his way down three hours after the incident occurred.

Q. What would lead you to that conclusion?

A. Because it takes thirty to sixty minutes maximum—thirty to ninety minutes maximum to reach your peak. And if you take three hours later you have more than ninety minutes. So you are on your way down definitely at that time.

(N.T. pps. 2–95 and 2–96).

The appellant argues that the witness opined that appellant's blood alcohol level at the time of the accident was .125 percent, and that he based his opinion on the assumption that appellant's blood alcohol had peaked prior to the accident. Corporal McGonigal testified that the percentage of alcohol in the blood peaks when all of the alcohol that was ingested is absorbed into the bloodstream. Generally, it takes from 30 to 90 minutes for alcohol to be fully absorbed and reach its peak level. *Commonwealth v. Speight*, 353 Pa.Super. 258, 509 A.2d 1263 (1986). Corporal McGonigal testified further that in order to know when the appellant reached his peak alcohol level, it is essential to know when he consumed his last drink. The evidence fails to disclose when the appellant drank that last drink prior to operating his vehicle through the stop sign at Indiana Avenue and Franklin Street and ramming the Datsun. The appellant argues that since there is no evidence as to when that last drink was taken, we do not know if appellant's blood alcohol was increasing or declining at the time of the

accident. Thus, appellant concludes that when Corporal McGonigal assumed that appellant's blood alcohol level had peaked prior to the accident, the witness assumed a fact not in evidence rendering his testimony inadmissible.

The Commonwealth, on the other hand, argues that Corporal McGonigal's testimony does not assume a fact not in evidence as urged by the appellant. On the contrary, the Commonwealth contends that from the facts in evidence, a jury could infer that the appellant had reached his peak alcohol level prior to the accident. The Commonwealth points to the following evidence to support this contention: (a) Appellant had nothing to drink from the time he picked up his two passengers (Colon and Rivera) at 12:30 a.m.; (b) appellant was driving at an excessive rate of speed in a residential neighborhood; (c) he sped through two stop signs without slowing down; (d) his passengers stated that immediately prior to the accident, the appellant seemed to "be in another world," with his mind "somewhere else"; (N.T. pps. 98 & 157) (e) at the scene of the accident the investigating officer noticed a strong odor of alcohol emanating from the appellant; (f) the officer also observed that appellant's eyes were watery and bloodshot, he was acting stuporous and sleepy, (g) he was swaying and sagging as he stood outside the vehicle, and (h) in the opinion of the police officers he was incapable of safely driving an automobile. The Commonwealth argues that considering all of this evidence as a whole, a jury could reasonably conclude that the appellant's blood alcohol had peaked prior to the accident.

First, we are not persuaded by the Commonwealth's argument. All of the evidence that the Commonwealth claims supports the inference that appellant's blood alcohol level had peaked prior to the accident is merely the traditional kind of testimony ordinarily introduced to establish that the accused was driving under the influence. It cannot be reasonably inferred from this evidence that the appellant's blood alcohol level had peaked prior to or at the time

of the accident, or that he was driving with any particular percentage of alcohol in his blood.

Second, we consider appellant's argument that there was no evidence whatsoever to support an assumption that appellant's blood alcohol content had peaked prior to the accident and was declining at the time of the accident (App. Brief, p. 14). We agree. We, however, do not view the witness' testimony as resting upon such assumption. The witness did not state that the appellant's blood alcohol percentage at the time of the accident was .125. He stated that *if it was assumed* appellant's blood alcohol content peaked prior to the accident, then it was possible that his blood alcohol percentage was .125 at the time of the accident. He went on to state that the only thing he could say for sure is that the appellant's blood alcohol content was declining at the time of the test because the test was administered over three hours after the accident and the appellant had no alcoholic beverage to drink during that three hour period. (N.T. pps. 2–96 & 2–99) The testimony the witness gave was based on the facts in evidence. Where the facts were deficient, the witness so stated. He testified that he was unable to give an opinion as to appellant's "related back" blood alcohol content without knowing when the appellant had taken his last drink.

It is generally recognized that alcohol has no effect on an individual until it is absorbed into the bloodstream. *Commonwealth v. Speights, supra,* citing *Schwarzbach v. Dunn,* 252 Pa.Super. 454, 381 A.2d 1295 (1977), allocatur denied April 5, 1978. Corporal McGonigal testified that alcohol is absorbed into the bloodstream within 30 to 90 minutes after consumption. "Thus, if [an accused's] drinking is confined to a period immediately before arrest, a test within the first 30 minutes after the arrest may show a low blood alcohol content whereas a test within [90] minutes after arrest may indicate [a much higher] blood alcohol level." (Citation omitted.) *Commonwealth v. Speight,* 353 Pa.Super. at 264, 509 A.2d at 1266.

In his direct testimony, Corporal McGonigal recognized the time required for alcohol to be absorbed into the blood. In cross examination, he frankly admitted that to accurately "relate back" the blood alcohol content of a driver who is tested three hours after the relevant event, it is essential to know when that driver had his last drink. The witness testified that if it was assumed that the appellant's blood alcohol content had peaked prior to the accident, then his blood alcohol content would have been declining at the rate of .015 per hour from the time of the accident. A chemical test of the blood made three hours after the accident that showed a blood alcohol percentage of .09 could be "related back" to a possible .125 percent at the time of the accident.[5]

Since the evidence did not reveal when appellant had his last drink or whether his blood alcohol had peaked prior to the accident, it is clear there is no way of judging whether his blood alcohol content was rising or declining at the time of the accident. The question then arises whether the testimony concerning the absorption and elimination of alcohol was relevant.

Evidence is relevant if it tends to make the fact at issue more or less probable. *See Gregg v. Fisher*, 377 Pa. 445, 105 A.2d 105 (1954). Evidence is relevant if it in some degree is probative and advances the inquiry. *See Bowers v. Garfield*, 382 F.Supp. 503 (E.D.Pa., 1974). The testimony of Corporal McGonigal was relevant in that it did tend to advance the inquiry as to a fact in issue, namely, whether the appellant was driving under the influence of alcohol in violation of § 3731(a)(1). There is no question that the result of the chemical test of appellant's blood that showed a .09 percentage three hours after the accident was admissible. The testimony of Corporal McGonigal tended to provide the court with some information as to how that test result may be interpreted. On the other hand, Corporal McGonigal's testimony that he could not state what appellant's blood alcohol content was at the time of the accident

5. Arithmetically, a blood alcohol content that declined at the rate of .015 for three hours to .09 would have begun at .135.

because he did not know when appellant took his last drink actually tended to show that the Commonwealth could not prove that the appellant was driving with a blood alcohol content of .10 or more in violation § 3731(a)(4).

As we have observed, the testimony was that it takes from 30 to 90 minutes after consumption for alcohol to be absorbed into the blood stream and have an effect on the drinker. The chemical test of the blood of appellant was taken 3 hours after the accident and it showed a blood alcohol percentage of .09. The evidence further indicated that alcohol is eliminated from the bloodstream at the rate of .015 per hour after reaching its peak level. Whether the appellant peaked just before the accident, shortly after the accident or ninety minutes after the accident, the fact finder could find that he was driving with alcohol in his system. Further, considering Corporal McGonigal's testimony along with the evidence of appellant's condition at the scene of the accident—the odor of alcohol about the appellant, appellant's bloodshot and watery eyes, his stuporous and sleepy state, his swaying and sagging as he stood outside of his automobile—the fact finder could conclude that appellant was driving under the influence of alcohol. Just as the evidence of bloodshot eyes, stuporous conduct, unsteady posture and an odor of alcohol was relevant and admissible, the testimony of Corporal McGonigal was admissible and advanced the inquiry with respect to the charge against the appellant that he violated § 3731(a)(1) by driving under the influence of alcohol. That testimony, though, was inadmissible and not probative of the charge against the appellant that he was driving with a blood alcohol content of .10 percent or more in violation of § 3731(a)(4). Since the charge under § 3731(a)(4) requires proof that the appellant was driving with a blood alcohol percentage of .10 or greater, the testimony of Corporal McGonigal that he *could have had* a .125 blood alcohol percentage *if we assume* his blood alcohol level peaked prior to the accident does not advance the inquiry and is inadmissible for purposes of that offense.

■ The appellant was charged with violating both § 3731(a)(1)—driving under the influence of alcohol to a degree that rendered him impaired—and § 3731(a)(4)—driving while the amount of alcohol in his bloodstream was .10 percent or more. A review of the record indicates that the trial court found appellant guilty of violating § 3731—driving under the influence of alcohol—without distinguishing whether he was guilty of violating § 3731(a)(1) or § 3731(a)(4) or both.

If the testimony of Corporal McGonigal was admitted and considered for purposes of the charge of violating § 3731(a)(1) and he was adjudged guilty of that violation only, we would affirm the judgment. Here, however, as we have noted, we are unable to determine which particular subsection of § 3731 the appellant was found guilty of violating.

In the trial court's opinion disposing of appellant's post-trial motions, that court stated:

"[Corporal] McGonigal gave an opinion that the appellant's blood/alcohol level exceeded .10 percent at the time of the accident by 'relating back' the appellant's blood/alcohol level to a time prior to the administration of the breathalyzer test."

This conclusion appears to indicate that the trial court admitted Corporal McGonigal's testimony for purposes of § 3731(a)(4).

Since, in this case, it is unclear whether the trial court properly received and admitted the testimony of Corporal McGonigal as evidence that the appellant was driving under the influence of alcohol to a degree that rendered him incapable of safe driving in violation of § 3731(a)(1), or improperly received and considered that testimony as evidence that appellant was driving while the amount of alcohol in his blood was .10 percent or more, we are constrained to grant appellant a new trial.

Reversed and remanded to the Court of Common Pleas of Philadelphia County for proceedings consistent with this opinion.

FLAHERTY and ZAPPALA, JJ., join in this opinion.

NIX, C.J., concurred in the result.

McDERMOTT, J., filed a dissenting opinion in which PAPADAKOS, J., joined.

STOUT, J., did not participate in the consideration or decision of this case.

McDERMOTT, Justice, dissenting.

The opinion announcing the judgment of the Court places great reliance upon a statement of the trial judge which appeared in her opinion in disposing of appellant's post-trial motions. In so doing the subscribing Justices ignore the context in which the trial judge's statement was made.

The trial judge's statement appears in her discussion of appellant's challenge to the expert witness' qualifications. The statement was a simple recounting of what the challenged witness had said. The judge did not state that she relied on this statement as proof of appellant's guilt under § 3731(a)(4).[1] Rather, in discussing appellant's sufficiency argument the judge stated: "[w]e find that the record provides ample basis for the verdict." Slip op. Stout, J. at 12. Admittedly, this statement is less than specific, but it obviously demonstrates that the judge looked to the entire record in finding appellant guilty.

In *Commonwealth v. Lobiondo,* 501 Pa. 599, 462 A.2d 662 (1983), we stated that trial court opinions in support of orders are "intended as an aid to the reviewing appellate court and cannot alter a previously entered verdict." *Id.,* 501 Pa. at 605, fn. 4, 462 A.2d at 665, fn. 4. Additionally, we have repeatedly held that "a ruling or decision of a lower court will be affirmed if it can be supported on any basis despite the lower court's assignment of a wrong reason." *Commonwealth v. Terry,* 513 Pa. 381, 404, 521 A.2d 398, 409 (1987). *See Commonwealth v. Shaw,* 494 Pa.

---

**1.** 75 Pa.C.S. § 3731(a)(4). Act of December 15, 1982, P.L. 1268, No. 289, § 9.

364, fn. 1, 431 A.2d 897, 899 (1981); *Commonwealth v. Allsup*, 481 Pa. 313, 317, 392 A.2d 1309, 1311 (1978).

The plurality ignores these tenets and concludes that the trial judge must have convicted appellant under § 3731(a)(4),[2] despite the existence of overwhelming evidence supporting a guilty verdict under section 3731(a)(1)[3] of the drunk driving statute.

Based on the evidence I would affirm the convictions.

PAPADAKOS, J., joins in this opinion.

**2.** *Id.*

**3.** 75 Pa.C.S. § 3731(a)(1). Act of December 15, 1982, P.L. 1268, No. 289, § 9.