563 A.2d 502

**COMMONWEALTH of Pennsylvania**

v.

**Darvin BRITCHER, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 8, 1988.

Filed Aug. 10, 1989.

516

518

Daniel W. Stern, New Bloomfield, for appellant.

Gloria J. McPherson, Asst. Dist. Atty., Shermans Dale, for Com., appellee.

Before BECK, KELLY and HESTER, JJ.

KELLY, Judge:

A jury convicted appellant, Darvin Britcher, of homicide by vehicle while driving under the influence, homicide by vehicle, involuntary manslaughter, and driving under the influence in connection with a fatal single car accident which occurred at 2:53 on the morning of Thursday, February 19, 1987. Appellant was granted a new trial on the homicide by vehicle charge because of an erroneous jury instruction, and was sentenced on the remaining convictions. On appeal, he contends that: convictions for homicide by vehicle while under the influence and homicide by vehicle were inconsistent and violative of double jeopardy and due process protections; statements made by him at the hospital should have been suppressed; expert toxicology testimony was improperly admitted; and, a jury instruction on the effect of alcohol on a fatigued individual was improper and prejudicial. We find no merit in the contentions.

### Facts and Procedural History

On appeal, we must view the record in the light most favorable to the Commonwealth as the prevailing party, all conflicts in the evidence must be resolved in favor of the Commonwealth, all reasonable inferences in favor of the Commonwealth must be allowed, and we must give due consideration to the fact that the jury was free to reject as not credible even uncontradicted evidence in favor of the defense. Viewed in this light, the record establishes the following.

At approximately 8:30 p.m. on Wednesday, February 18, 1987, appellant, then nineteen years old, went to a social gathering at the home of a friend located a short distance down a gravel road off Route 74 in Saville Township, Perry County, Pennsylvania. Several other underage youths were there, all were illegally drinking beer from cans and from cups filled from a beer keg purchased during the

course of the evening. Appellant admits to having had about nine beers; however, he acknowledged that he had not counted but merely estimated his consumption based on how intoxicated he felt. He claimed that he could hold his liquor well, and that he did not generally become impaired until he had about eighteen beers. Expert toxicology evidence indicated that appellant underestimated his consumption of alcohol.

Appellant decided to leave the gathering and go home at approximately 2:50 a.m. on the morning of Thursday, February 19, 1987. Though all of the people at the party who testified at trial indicated that appellant did not appear intoxicated, the record does contain the following significant exchange during redirect examination of Terry Cambell, the host of the gathering:

Q. If you thought at the time Darvin was leaving your house he was incapable of driving, what would you have done?

A. I would have told him to stay. *But he wanted to go home. You can't stop a person if they want to leave.*

(N.T. 8/25–26/87 at 176). (Emphasis added).[1]

Appellant agreed to give two friends a ride home, Tony and Harry Kegg. Tony climbed into the back seat. Harry took the front seat. None of the three used their safety belts.

Appellant drove down the gravel road to Route 74 at a moderate rate of speed. When he reached Route 74, however, he quickly accelerated to approximately 80 miles per hour. Tony, in the back seat, though intoxicated, became excited and nervous. He told appellant to slow down and that he wanted to reach home alive. Appellant did not slow down, and so Tony climbed off the seat and crouched down behind the front seats. Appellant then told Tony that he had everything under control and that Tony should get back

1. The jury may reasonably have construed the highlighted portion of the above answer to have substantially, albeit inadvertently, undermined the testimony of appellant's friends that appellant appeared sober to them at the time he left.

up in the seat. Tony did, briefly. Tony soon saw that appellant was not in control, and that they were going to crash. He jumped back down behind the front seats.

As appellant's car approached a curve just less than a mile from where the gathering had been held, it slid across its lane, onto the shoulder, and off the road. It struck an embankment, some shrubs, a tree, and a telephone pole, flipping over in a roll, and finally coming to a rest again on its wheels. The car was demolished, all of the windows were shattered, and debris was scattered over a wide area. Appellant and both of the passengers were thrown from the car during the accident. Appellant suffered a broken leg. Tony was knocked unconscious and suffered serious injuries. Harry died.

When interviewed at the scene, appellant acknowledged that he had been the driver. When interviewed later at the hospital (after being given full and correct *Miranda* warnings) appellant acknowledged again that he had been the driver, indicated that he had drunk nine beers that evening and that he may have been driving too fast, and consented to a blood alcohol test. The blood sample was drawn approximately three and one-half hours after the accident; tests indicated that appellant then had a blood alcohol content (BAC) of .14 percent. Appellant had no alcohol between the time of the accident and the time the blood sample was drawn for the BAC test.

Pre-trial suppression motions were denied. Following a two day jury trial, appellant was convicted of homicide by vehicle while under the influence, homicide by vehicle, involuntary manslaughter, and driving under the influence. On post-verdict motions, the trial court vacated the homicide by vehicle conviction and ordered a new trial on that charge based upon an erroneous jury instruction as to the culpable mental state required for the offense. All other motions were denied.

Appellant was sentenced to a three to six year term of imprisonment on the homicide by vehicle while under the influence conviction, and a concurrent term of two and

one-half to five years on the involuntary manslaughter conviction. The driving while under the influence conviction was deemed to have merged with the homicide by vehicle while under the influence conviction. This timely appeal followed.

On appeal, appellant contends simultaneous conviction of homicide by vehicle and homicide by vehicle while under the influence violates the Double Jeopardy and Due Process provisions of the Pennsylvania and United States Constitutions; statements made at the hospital should have been suppressed; expert toxicology testimony was improperly allowed; and, the trial court erred in its charge to the jury. We find no merit in the contentions, and shall discuss each *seriatim.*

## I. DOUBLE JEOPARDY AND DUE PROCESS

Appellant contends that both the Double Jeopardy and Due Process provisions of the Pennsylvania and United States Constitutions are violated when the Commonwealth is permitted to try a defendant on two allegedly inconsistent charges for the same criminal acts. Appellant argues:

Where findings of guilt on two separate offenses impliedly require mutually exclusive factual determinations, the rights of the accused to due process of law and to freedom from double jeopardy are violated. Here, in order to be guilty of HBV/DUI, the jury had to conclude that the Defendant caused a death because of an alcohol related impairment in his driving; in order to convict the Defendant of the companion charge of HBV, the jury had to conclude that the cause of death was any violation of the Motor Vehicle Code *except* alcohol related impaired driving. *There is no justice where the Commonwealth can ask the jury to "elect" between two alternative causes of death.* Accordingly, the Defendant should be granted a new trial, and *the Commonwealth should be required to choose between a prosecution based on HBV/DUI or one based on HBV.*

(Appellant's Brief at 6) (emphasis added). Appellant's argument is severally flawed.

### A. *Double Jeopardy*

The Double Jeopardy Clause of the Fifth Amendment, as applied to the states through the Due Process Clause of the Fourteenth Amendment, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The constitutional prohibition of double jeopardy has been held to consist of three separate guarantees: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. *See North Carolina v. Pierce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

■ Appellant's contention that he should not be *tried* for both homicide by vehicle and homicide by vehicle while under the influence implicates none of the above interests. Hence, his double jeopardy claim must fail in that respect.

■ To the extent appellant also challenges retrial on the homicide by vehicle charge based upon alleged double jeopardy implications of being *sentenced* for both homicide by vehicle and homicide by vehicle while under the influence, his claim must also fail. In *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1931), the Supreme Court explained the scope of double jeopardy protection against multiple punishments for separate offenses arising from the same transaction as follows:

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is *whether each provision requires proof of an additional fact which the other does not.* 'A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the de-

fendant from prosecution and punishment under the other.'

*Id.* at 304, 52 S.Ct. at 182, 76 L.Ed. at 309. (Emphasis added). *See also United States v. Woodward,* 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985); *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). Thus, for two crimes arising from the same transaction to constitute the same offense, a comparison of their statutory elements must reveal that proof of one offense will necessarily prove the other. *Illinois v. Vitale, supra.* Appellant concedes that homicide by vehicle and homicide by vehicle while under the influence each contain an element which the other does not; hence, no double jeopardy interest is violated by imposition of separate sentences for both offenses arising from a single accident.

### B. *Due Process*

■■■ Appellant argues that it is "unfair" to make him defend against two mutually inconsistent theories of liability, *i.e.* Harry Kegg died as a direct result of appellant's *intoxication,* or Harry Kegg died as a direct result of appellant's *reckless speeding.* Appellant would have this Court require the Commonwealth elect *before trial* which theory of liability it intended to pursue. We cannot agree.

Assuming for the moment that the elements of the offenses rendered the offenses "mutually inconsistent," it certainly would not follow that "due process" would require the Commonwealth to elect to pursue one or the other theory *before trial.* If so, a defendant could escape conviction on one theory, by proving he was guilty under the other. Due process does not mandate such a result.

■■■ Arguably, *conviction* of mutually inconsistent offenses would raise due process concerns *after trial.* While an inconsistency with regard to a *conviction* and a mutually inconsistent *acquittal* may be explained in terms of an unreviewable exercise of "mercy" or "jury nullification" powers, mutually inconsistent *convictions* could not be justified on such grounds. *See Commonwealth v. Frisbie,* 506

Pa. 461, 467, 485 A.2d 1098, 1099 (1984) (when crimes are mutually inconsistent only one sentence may be sustained); *cf. Commonwealth v. Anderson*, 379 Pa.Super. 589, 550 A.2d 807 (1988) (*en banc*, discussing inconsistent verdicts).

Nonetheless, we are faced with no such situation here. While homicide by vehicle and homicide by vehicle while under the influence each require proof of direct causation of the same death by different causes, the causes need not be "mutually inconsistent." Succinctly, an effect may have more than one direct cause. *See Commonwealth v. Root*, 403 Pa. 571, 170 A.2d 310 (1961). Multiple causes may *all* give rise to criminal liability so long as one does not supervene the other and each may properly be considered direct and substantial. *Id.*, 170 A.2d at 313. Such causes may properly be characterized as substantial concurrent causes.

Here, appellant was recklessly speeding *and* he was intoxicated. Reckless speeding forms the predicate for one conviction, intoxication forms the predicate for the other. While the theories of criminal liability may overlap with regard to the causal nexus between intoxication and the death of the victim, there is no "mutual exclusivity" upon which a due process claim may properly be raised. Hence, the due process aspect of appellant's first claim is without merit.

## II. SUPPRESSION OF HOSPITAL STATEMENT

Appellant contends that his statements at the hospital should have been suppressed because he was visibly intoxicated and in severe pain; and therefore, could not have entered a voluntary, knowing, and intelligent waiver of his right against self-incrimination. We cannot agree.

Nowhere in the record does it appear that appellant was formally arrested or subjected to conditions of detention "functionally equivalent to arrest" prior to or during the interview in the hospital emergency room which produced the statements appellant sought to suppress. Indeed, in what appears to be an exercise of compassion and forebear-

ance in light of the tragic death of appellant's friend, the officer merely issued appellant a citation on February 19, 1987, and a summons on February 20, 1987. Appellant was not formally arrested on any charge relating to this incident until the day of his preliminary arraignment on March 4, 1987. Thus, it appears that appellant was not taken into "custody," and therefore, no *Miranda* waiver was required. *See Pennsylvania v. Bruder,* 488 U.S. ——, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988); *Commonwealth v. Gonzalez,* 519 Pa. 116, 124–125, 546 A.2d 26, 30 (1988); *Commonwealth v. Ellis,* 379 Pa.Super. 337, 356, 549 A.2d 1323, 1328–34 (1988) (collecting cases).

Moreover, there is sufficient evidence to sustain the trial court's conclusions that full and correct *Miranda* warnings were given, and that a voluntary, knowing, and intelligent waiver was made.

Recent United States Supreme Court cases have made it clear that a *Miranda* waiver is valid as "a matter of law" if: full and correct *Miranda* warnings are given; the suspect has sufficient capacity to understand *the warnings;* and the suspect's decision to waive his rights was not the product of official/governmental coercion. *See Colorado v. Spring,* 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987); *Connecticut v. Barrett,* 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987); *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *see also* Berger, *Compromise and Continuity: Miranda Waivers, Confession Admissibility, and the Retention of Interrogation Protections,* 49 U.Pitt.L.Rev. 1007, 1007–64 (1988) (analyzing the above cases, reaching the same conclusion, and characterizing the result as "a reasonable effort to achieve a balance"); Boyle, *Waiving Miranda Goodbye?,* 21 Creighton L.Rev. 239, 239–63 (1987) (analyzing the above cases, reaching the same conclusion, and characterizing the result as "constitutionally sound"). While some commentators have criticized the narrow focus of the United States Supreme Court's construction of *Miranda* 's requirement of

a "voluntary, knowing, and intelligent" waiver, they none-theless concede that the Supreme Court has in fact narrowed the focus in the manner suggested above. *See e.g.* Dix, *Federal Constitutional Confession Law*, 67 Tex.L. Rev. 231, 231–349 (1988); Shultz, *"Officer, What's the Charge?"*, 30 Ariz.L.Rev. 551, 551–70 (1988); Gehring, *Colorado v. Connelly: The Demise of Free Will as an Independent Basis for Finding a Confession Involuntary*, 33 Vill.L.Rev. 895, 895–923 (1988).

■ Here, appellant contends that his *Miranda* waiver could not be deemed to have been made "voluntarily, knowingly, and intelligently" because he was intoxicated and in severe pain. If his intoxication and the pain combined to render him incapable of understanding the *Miranda* warnings, his waiver would in fact be invalid. *See e.g. Commonwealth v. Cephas*, 361 Pa.Super. 160, 522 A.2d 63 (1987); *Commonwealth v. Anderl*, 329 Pa.Super. 69, 477 A.2d 1356 (1984). Likewise, appellant must also have known what he was saying, and have intended to say it. *Commonwealth v. Edwards*, 521 Pa. 134, 148–149, 555 A.2d 818, 825 (1989).

■ However, there is no *per se* rule of suppression based upon a mere showing of cognitive impairment. *See Commonwealth v. Jones*, 457 Pa. 423, 322 A.2d 119 (1974); *Commonwealth v. Cephas, supra*, 522 A.2d at 66 (Olszewski, J. concurring). Rather, when evidence of impairment is present, it is for the suppression court to decide whether the Commonwealth has established by a preponderance of the evidence that the suspect nonetheless had sufficient cognitive awareness to understand the *Miranda* warnings and to choose to waive his rights. *See Commonwealth v. Edwards, supra*, 555 A.2d at 826; *Commonwealth v. Stark*, 363 Pa.Super. 356, 526 A.2d 383 (1987); *Commonwealth v. Devereaux*, 304 Pa.Super. 327, 450 A.2d 704 (1982).

■ In *Cephas* and *Anderl*, the suppression court found that the prosecution failed to meet its burden. Here, on the other hand, the suppression court held that the burden was

met. As the suppression court's finding is fully supported by the investigating officer's testimony, we find no error or abuse of discretion in the trial court's decision not to exclude the statements. *Cf. Commonwealth v. Edwards, supra,* 555 A.2d at 826–827. Hence, appellant's second contention is found to be without merit.

## III. EXPERT TOXICOLOGY EVIDENCE

Appellant's third contention is that the trial court abused its discretion in permitting the testimony of the Commonwealth's expert, a forensic toxicologist, with respect to appellant's blood alcohol content at the time of the accident. Specifically, appellant contends that the testimony of the Commonwealth's expert, Dr. G. Thomas Passananti, should not be considered where: (1) the Commonwealth failed to lay a proper foundation for the expert's opinion based on "retrograde extrapolation;" (2) the witness was permitted to testify regarding impairment at a blood alcohol content of less than .05%; and (3) the witness was permitted to contradict the judicially noticed fact that alcohol is absorbed into the bloodstream in the 30 to 90 minute period following its ingestion. We cannot agree.

It is axiomatic that the admissibility of expert testimony is a matter within the broad discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion. *See Commonwealth v. Smallwood,* 465 Pa. 392, 350 A.2d 822 (1976); *Commonwealth v. Ametrane,* 205 Pa.Super. 567, 210 A.2d 902, *aff'd* 422 Pa. 83, 221 A.2d 296 (1965). Under Pennsylvania law, an expert may not base an opinion on conjecture or guesswork, however, an expert opinion may be given in response to a hypothetical question posed by counsel so long as the assumed set of facts upon which the opinion is to be based is eventually supported by competent evidence and the reasonable inferences derivable therefrom. *See Commonwealth v. Anderson,* 381 Pa.Super. 1, 12–13, 552 A.2d 1064, 1070 (1988) *citing Commonwealth v. Daniels,* 480 Pa. 340, 390 A.2d 172 (1978). Moreover, any deficit in the clarity of, or

basis for, the assumptions upon which the hypothetical is based, may be cured by adequate cross-examination, or redirect examination. *Commonwealth v. Gilliard*, 300 Pa. Super. 469, 446 A.2d 951 (1982).

We have carefully reviewed the testimony of the Commonwealth's witness, Dr. Passananti, and find that his testimony regarding hypothetical questions and estimations fell within the permissible realm of expert testimony. Further, Dr. Passananti's answers were the type that would materially assist the jury in its search for truth on the issues. *See Commonwealth v. Rodgers*, 364 Pa.Super. 477, 528 A.2d 610 (1987); *see also Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976).

■ The expert was permitted to give an expert opinion based upon a hypothetical scenario presented by the Commonwealth which was plainly supported by reasonable inferences derivable from the evidence presented during the trial. Contrary to appellant's assertions, the scenario was supported by facts already presented, or expected and in fact later presented, regarding each of the variables the expert deemed relevant to this calculation of appellant's BAC at the time of the accident. Moreover, the expert was cross-examined in minute detail regarding the basis for his retrograde extrapolation of appellant's BAC at the time of the accident and in similar detail regarding the effects of any variance in the various relevant factors considered. We find that the foundation for the expert's retrograde extrapolation was sufficient, and any arguable defects in the foundation, because of the assumptions upon which it was based, were cured during the course of cross-examination. We note that the jury was specifically instructed that in accessing the weight to accord the expert testimony, it should consider, along with other factors, the degree to which the expert's hypothetical assumptions corresponded to their actual findings on the relevant facts.

In *Commonwealth v. Gonzalez, supra*, our Supreme Court held that retrograde extrapolation testimony was improperly admitted when there was *no evidence* as to

when the suspect had his last drink, because the expert opinion assumed a fact not supported by the evidence, *i.e.* that appellant's BAC peaked at or prior to the moment of impact. Our Supreme Court reasoned that the expert opinion should not have been admitted because it distorted the evidence presented, and permitted the jury to base its verdict on unsupported conjecture. 546 A.2d at 33–35. Here, on the other hand, the expert (giving appellant the benefit of all possible doubts) assumed for the purpose of the extrapolation that appellant drank his last beer *at the moment of impact,* and that since *that* alcohol would not have been absorbed into the blood stream, the BAC would have been .18 rather than .203, which the expert's calculation would otherwise have indicated.

Moreover, with regard to appellant's assertion that there was no evidence as to when appellant consumed the alcohol detected by the blood test three and one half-hours after the accident, appellant himself and several other people at the party indicated that appellant had been drinking casually from about 8:30 p.m. to sometime around 2:45 a.m. that night. Neither appellant, nor Tony Kegg, nor any other witness indicated that appellant drank in the car, or had downed several beers shortly before leaving. Thus, the jury could reasonably infer from the evidence presented that appellant had one, two or at most three beers during the critical 30 to 90 minute period before the accident.

Moreover, given the degree by which appellant's extrapolated BAC exceeded the legal limit, any variance between the *expert's assumptions* and the *jury's actual findings* with respect to how many beers appellant had within the critical 30 to 90 minute period before the accident would be inconsequential.[2] The jury was informed that the extrapo-

2. Even without considering the fact that a significant part of any alcohol consumed *within* the critical period would have been absorbed into appellant's blood stream at the time of the accident, and therefore would have raised appellant's BAC, appellant would still have had to have consumed *at least* six beers in the critical 30 to 90 minute period before the accident for his BAC at the time of the accident to have been less than .10. It was clearly reasonable for the jury to infer from the testimony of the various witnesses that such

lated BAC should be reduced from .203 by .02 for every beer consumed in the relevant time period. Hence, the jury was provided with a simple formula to reach its own estimate of the BAC, based upon its own findings rather than the expert's assumptions as to how many beers were consumed in that period.

In this regard it is important to recall that appellant's precise BAC at the time of the accident was not critical to any issue at trial. Rather, the expert testimony was offered to assist the jury in determining whether the evidence established beyond a reasonable doubt that appellant's BAC was *at least* .10 at the time of the accident. *Cf. Commonwealth v. Hanes,* 361 Pa.Super. 357, 366–367, 522 A.2d 622, 626 (1987) (an accurate determination of the precise value of stolen logs was not required so long as the formula provided by the expert permitted jury to conclude beyond a reasonable doubt that the logs were worth *at least* a particular amount). Despite the imprecision involved, we find that the expert testimony was helpful, and not confusing or prejudicial under these circumstances. Hence, *Gonzalez* is materially distinguishable and therefore inapposite.

■ Appellant's contention that the expert's references to the effects of alcohol at BAC levels less than .05 constitutes reversible error is likewise without merit. Here the evidence plainly established that appellant's BAC was *above .10* at the time of the accident. Hence, the reference was superfluous, and harmless beyond a reasonable doubt in this case. Consequently, we decline to address appellant's novel contention that 75 Pa.C.S.A. § 1547(d) creates a conclusive negative presumption that persons with BAC levels of less than .05 are *not* intoxicated, and which mandates exclusion of evidence of the effects of BAC levels below .05 on an individual's driving skills. *See generally* Perrine, *et al., Special Report 216: Zero Alcohol,* Ch. 3 "Alcohol, Performance, and Crash Risk," at 39–66 (Trans.

copious drinking during the critical 30 to 90 minute period before the accident did not occur.

Research Bd.1987) (discussing the significant effects of BAC's at or below .04, collecting authorities).

■ Finally, appellant's contention that the expert was improperly permitted to contradict a judicially noticed fact is also meritless. The fact judicially noticed, *i.e.* that alcohol is absorbed into the blood stream during a 30 to 90 minute period, is an expression of a convenient generality. The well-qualified expert in this case did not contradict that generalization. Rather, he merely elected to provide a more precise statement of the absorption phenomenon by explaining that absorption was unlike elimination in that absorption did not occur at a constant rate, and that the greater percentage of the alcohol consumed would be absorbed early in the period. He explained further that the 30 to 90 minute generalization reflected the time for *total* absorption. *See Special Report 216: Zero Alcohol, supra,* at 41–42 (discussing the absorption phenomenon in similar terms). We find no contradiction. More importantly, we find no basis in this record to question the well-qualified expert's explanation of the subtleties of the absorption process.

Hence, each of appellant's challenges to the expert's testimony are found to be without merit.

## IV. JURY INSTRUCTIONS

Appellant's final contention on appeal is that the trial court erred in its charge to the jury by instructing the jury to consider the effects of alcohol on a fatigued individual where there was no scientific evidence introduced to support the conclusion that fatigue in any way influences alcohol's impact on an individual, and that the trial court also erred in rejecting his request for binding instructions with respect to the testimony of Dr. Passananti for the same reasons argued above in favor of exclusion of his testimony. We cannot agree.

In *Commonwealth v. Alvin,* 357 Pa.Super. 509, 516 A.2d 376 (1986), an undivided *en banc* panel of this Court sum-

marized the law regarding alleged errors in jury instructions as follows:

> In reviewing jury instructions for prejudicial and reversible error, the charge must be read and considered as a whole; error cannot be predicated on isolated excerpts, and it is the general effect of the charge that controls.... Moreover, there is no right to have any particular form of instruction given; it is enough that the charge clearly and accurately explains the relevant law.... Where the charge given properly covers the requested point, it is not error for the trial court to refuse to give additional instruction.

516 A.2d at 381 (citations omitted); *see also Commonwealth v. Grove*, 363 Pa.Super. 328, 526 A.2d 369 (1987).

■ The trial court instructed the jury to determine the impact of alcohol upon the appellant, an admittedly tired individual, on the night in question. We find nothing wrong with this instruction. A driver's fatigue, if any, is unquestionably a proper factor for a jury to consider in determining whether the driver was intoxicated to a point where the driver was incapable of driving safely. It does not require expert testimony to support a conclusion that the effects of alcohol on a tired driver may be greater than on a fully rested one. To the contrary, alcohol is generally known to have sedative effects which increase fatigue, and which consequently increases the risk of crashing by dulling reflexes and/or increasing the risk of falling asleep at the wheel. Thus, the combined effects of alcohol and fatigue may render a driver "incapable of driving safely" within the plain meaning of the statute. *See Report 216: Zero Alcohol, supra,* at 58; Landaurer & Howatt, *Low and Moderate Alcohol Doses, Psychomotor Performance and Perceived Drowziness,* 26 Ergonomics 247, 247–57 (1983); Ryder, Manlin & Kinsley, *The Effects of Fatigue and Alcohol on Highway Safety* (N.T.S.1981). Hence, we find no error in this instruction.

Finally, as we find that the court committed no error in admitting Dr. Passananti's testimony, there was similarly

534

no error in the court's rejection of appellant's request for binding instructions to reject that testimony on the same grounds. Therefore, we find appellant's final contention wholly without merit.

### Conclusion

Judgment of Sentence is affirmed.