**STATE of Minnesota, Respondent,**

v.

**David Burnell JENSEN, Appellant.**

No. C7–91–1139.

Court of Appeals of Minnesota.

March 10, 1992.

Review Denied May 15, 1992.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey County Atty., Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

Philip G. Villaume, Philip G. Villaume & Associates, Bloomington, for appellant.

Considered and decided by FORSBERG, P.J., and KLAPHAKE and DAVIES, JJ.

## OPINION

DAVIES, Judge.

The trial court denied appellant David Jensen's motion to suppress expert testimony as to blood alcohol that relied on retrograde extrapolation. The court convicted Jensen of criminal vehicular homicide. Jensen appeals, arguing that retrograde extrapolation is unreliable because it relies on unpredictable variables. We affirm.

## FACTS

The parties stipulated to the following

facts.[1] Jensen is a 21–year–old male who weighs 190 pounds. He and a friend left work at 5:00 p.m. and went to a bar. Jensen ate lightly and drank beer. After about an hour, they went to a second bar. Jensen told police that he left the second bar between 9:00 and 10:00 p.m. and that he did not have anything to drink after leaving this bar. Jensen's friend did not see him leave but thought Jensen left between 10:00 and 10:30 p.m.

At 10:53 p.m. Jensen allegedly hit and killed Joseph Amyotte who was walking along the road with two friends. Police were unable to locate Jensen until eleven and a half hours had passed after the fatal accident. Blood tests taken at that time showed a .07 alcohol concentration. The state charged Jensen under Minn.Stat. § 609.21, subd. 1(3) (1990) (causing death by operating a motor vehicle while having an alcohol concentration of .10 or more).

At a pretrial motion hearing, Anne R. Manly and Thomas R. Burr described retrograde extrapolation as the process of determining a person's alcohol concentration at a time prior to testing. Using retrograde extrapolation, Manly estimated that Jensen had between a .181 and a .2446 alcohol concentration at the time of the accident. Burr calculated Jensen's alcohol concentration as between .19 and .31. Both experts testified that the scientific community generally accepts the basic principles of retrograde extrapolation, but that retrograde extrapolation is unreliable when an expert has insufficient information about variables.

## ISSUE

Did the trial court abuse its discretion by admitting expert testimony that relies on retrograde extrapolation?

## ANALYSIS

It is an issue of first impression whether expert testimony that relies on retrograde extrapolation is admissible.

We will not reverse the admission of expert testimony unless the trial court abused its discretion. *May v. Strecker*, 453 N.W.2d 549, 554 (Minn.App.1990), *pet. for rev. denied* (Minn. June 15, 1990). Expert testimony generally is admissible if: (1) it assists the trier of fact, (2) it has a reasonable basis, (3) it is relevant, and (4) its probative value outweighs its potential for unfair prejudice. *State v. Schwartz*, 447 N.W.2d 422, 424 (Minn.1989). A reasonable basis exists where an expert's opinion is probably true; mathematical or absolute certainty is not required. *See Block v. Target Stores, Inc.*, 458 N.W.2d 705, 710–11 (Minn.App.1990), *pet. for rev. denied* (Sept. 28, 1990).

Two tests are commonly used to examine the admissibility of scientific evidence. The *Frye–Mack* test is the traditional test for determining the admissibility of emerging scientific techniques. *Schwartz*, 447 N.W.2d at 424. It requires that "experts in the field generally agree that the evidence is reliable." *Id.* The *Dille* test requires that a "proponent of a chemical or scientific test * * * establish that the test itself is reliable" and that it was administered in such a way as to ensure reliability. *State v. Dille*, 258 N.W.2d 565, 567 (Minn.1977).

The *Frye–Mack* test does not apply here because the principles underlying retrograde extrapolation are not emerging or novel. *See Schwartz*, 447 N.W.2d at 424. Nor does the *Dille* test apply because retrograde extrapolation is not a chemical or scientific test, but rather a mathematical formula. *See Dille*, 258 N.W.2d at 567.

Jensen argues retrograde extrapolation is necessarily based on unreliable facts and the trial court therefore abused its discretion by admitting the experts' testimony. We disagree.

Manly and Burr testified that retrograde extrapolation involves multiplying the alcohol elimination rate by the number of hours between the incident and testing, adding that to the test reading, and then subtracting any alcohol unabsorbed at the time of the accident. While the experts admitted

---

1. To obtain appellate review, Jensen pleaded not guilty, waived a jury trial, and stipulated to the state's case pursuant to *State v. Lothenbach*, 296 N.W.2d 854, 857 (Minn.1980).

that an individual's specific alcohol absorption and elimination rates may vary widely, the state need not prove a defendant's exact alcohol concentration. The state need only prove that Jensen's alcohol concentration was .10 or more. Minn.Stat. § 609.21, subd. 1(3); *see also Commonwealth v. Britcher*, 386 Pa.Super. 515, 531, 563 A.2d 502, 509 (Pa.Super 1989) (precise alcohol concentration not required but only evidence that the alcohol concentration at least .10), *aff'd per curiam*, 527 Pa. 411, 412, 592 A.2d 686, 687 (1991).

Manly and Burr had information about Jensen's height, weight, gender, amount and type of food eaten, the type of alcohol consumed, when he drank his last beer, the time between the accident and testing, and that he did not consume any alcohol after the accident. Neither expert based his or her opinion on Jensen's specific elimination rate, but rather each based it on a range of probable elimination and absorption rates. Both experts explained that, absent metabolic pathology or steroid use, most elimination rates fall within a range of .01 to .02 grams per hour.

Burr assumed that Jensen had nothing to drink after 10:15 p.m., that eleven and a half hours passed between the accident and the test, and that the test revealed a .07 alcohol concentration. Using a .01 and a .02 elimination rate, the extremes of probability, he calculated Jensen's alcohol concentration to be between .19 and .31. Burr noted that Jensen's food consumption would only slightly lower these figures.[2]

Manly applied the average elimination rate of .015 per hour and estimated that Jensen had a .2446 alcohol concentration at the time of the accident. Despite the fact that Jensen told police he had stopped drinking about an hour to two hours before the accident, Manly assumed that Jensen consumed three beers a half hour before the accident and that these beers were not absorbed into the blood stream at the time of the accident. She subtracted these unabsorbed beers and estimated Jensen's alcohol concentration to be between .181 and .2446. *See id.* (admission of retrograde testimony upheld where assumptions favorable to the defendant eliminated uncertain variables).

Both experts testified that based on these calculations and assumptions they could conclude with a reasonable degree of scientific certainty that Jensen's alcohol concentration at the time of the accident fell within their estimated ranges. While it is possible that Jensen's alcohol concentration fell outside this range, we cannot say the trial court abused its discretion in determining that Manly's and Burr's estimates were probably correct and therefore had a reasonable basis. Nor did the trial court abuse its discretion in determining that the experts' testimony assisted the trier of fact, was relevant, and had probative value that outweighed any potential for unfair prejudice.

The record contains sufficient evidence to support Jensen's conviction. We specifically note that Manly's and Burr's lowest estimates (.181 and .19) significantly exceed the .10 alcohol concentration required for a violation at the time of the accident.

### DECISION

The trial court did not abuse its discretion by admitting Manly's and Burr's retrograde extrapolation.

Affirmed.

---

**2.** Variables affecting absorption and elimination rates would most likely go to the weight, rather than admissibility of retrograde extrapolation testimony. *See Cueller v. Hout,* 168 Ill.App.3d 416, 421–23, 118 Ill.Dec. 867, 870–71, 522 N.E.2d 322, 325–26 (1988), *pet. for rev. denied* 122 Ill.2d 572, 125 Ill.Dec. 214, 530 N.E.2d 242 (1988).