**STATE of Minnesota, Respondent,**

v.

**Ricky Wayne WOLF, Appellant.**

**No. C0–98–1491.**

Court of Appeals of Minnesota.

April 20, 1999.

Mike A. Hatch, Attorney General, 1400 NCL Tower, St. Paul, and Sandra Margaret Schrader, St. Cloud City Attorney, St. Cloud, for respondent.

Michael L. Samuelson, St. Cloud, for appellant.

Considered and decided by TOUSSAINT, Chief Judge, ANDERSON, Judge, and HOLTAN, * Judge.

## OPINION

TOUSSAINT, Chief Judge

Appellant Ricky Wayne Wolf challenges his conviction of two counts of driving while under the influence of alcohol in violation of Minn.Stat. § 169.121, subds. 1(e), 3(c) (1998). Because the district court did not abuse its discretion in limiting the testimony of his expert witness regarding the Intoxilyzer 5000 and venue was proper, we affirm.

## FACTS

On October 21, 1996, Ricky Wayne Wolf was arrested for driving while under the influence of alcohol (DWI) in the city of St. Cloud, which lies within Stearns and Benton Counties. The stop occurred in Benton County, more than 1,500 feet from the Benton–Stearns County line. Charges were brought in Stearns County.

At the omnibus hearing in Stearns County, Wolf moved for a change of venue to Benton County. The district court denied Wolf's motion and held that pursuant to Minn.Stat. § 487.21, subd. 4, the case was properly venued in Stearns County. Before the trial, Wolf told the district court that his expert witness would likely testify about: (1) the operation and maintenance of the Intoxilyzer 5000 and the particular machine used in this case; (2) the scientific theory of breath testing; (3) the accuracy and reliability of infrared breath testing for alcohol; (4) anomalous situations that might affect the accuracy and reliability of the Intoxilyzer; (5) the training of the Intoxilyzer operators and the approved and certified procedure for testing in Minnesota; (6) the effect of alcohol consumption on the result of a breath test and on the human body; and (7) the formula developed by Swedish scientist E.M.P. Widmark.

The district court limited Wolf's expert testimony to causes of Intoxilyzer malfunctions for which there was evidence in the record. The district court prohibited the expert from introducing malfunction theories without evidence in the record raising an inference of a false Intoxilyzer reading. The expert was also not allowed to testify about the "Widmark" formula or any other types of "extrapolation."

Wolf stipulated to the facts and waived his right to a jury trial. The district court convicted him and Wolf now appeals.

## ISSUES

1. Did the district court abuse its discretion in limiting the testimony of Wolf's expert witness?

2. Does Minn.Stat. § 487.21, subd. 4, violate Article I, Section 6 of the Minnesota Constitution?

## ANALYSIS

### I.

Wolf first argues that the district court denied his constitutional right to a fair trial by limiting the testimony of his expert witness. "[T]he district court has broad discretion in deciding whether testimony by a qualified expert should be received." *State v. Helterbridle*, 301 N.W.2d 545, 547 (Minn. 1980). We defer to the district court's exercise of discretion and will not reverse absent clear error. *State v. Koskela*, 536 N.W.2d 625, 629 (Minn.1995). Generally, expert testimony is admissible if (1) it assists the trier of fact; (2) it has a reasonable basis; (3) it is relevant; and (4) its probative value outweighs its potential for unfair prejudice. *State v. Jensen*, 482 N.W.2d 238, 239 (Minn. App.1992), *review denied* (Minn. May 15, 1992).

A defendant in a criminal case has the right to present a defense in accordance with the rules of evidence. *See State v. Buchanan*, 431 N.W.2d 542, 550 (Minn.1988) (defendant's constitutional right to give testimony must be balanced against relevancy requirement). Relevant evidence is admissible. Minn. R. Evid. 402. Relevant evidence is any evidence tending to make the exis-

---

pointment pursuant to Minn. Const. art. VI, § 10.

tence of a fact of consequence to the determination of the action more or less probable than it would be without the evidence. Minn. R. Evid. 401.

■ After being notified that Wolf's expert witness, Thomas Burr, would likely testify about the reliability and operation of the Intoxilyzer and extrapolation using the "Widmark" formula, the district court applied the four-part test described above and decided to limit his testimony. In limiting Burr's testimony to evidence in the record that sufficiently raises an inference of a false Intoxilyzer reading, the district court weeded out irrelevant testimony. Testimony of possible theories of malfunction for which no evidence exists in the record would not assist the trier of fact in resolving the factual issue of whether Wolf's blood-alcohol level was more than .10. Likewise, extrapolation testimony in this case would have been of no assistance to the trier of fact. While retrograde extrapolation may be admissible, it is unreliable when an expert has insufficient information about variables. *See Jensen*, 482 N.W.2d at 239 (noting that the experts had information about the type of alcohol consumed, the time of last alcohol intake, and the type of food ingested). Wolf did not know how many drinks he consumed, making extrapolation using the Widmark formula inherently unreliable. Hence, the limitations placed on Burr's testimony were not an abuse of discretion.

## II.

■ Wolf also argues that the state failed to establish venue, one of the elements of a DWI offense. Wolf contends that under Article I, Section 6 of the Minnesota Constitution and Minn. R.Crim. P. 24.01, proper venue is in Benton County, not Stearns County. "In evaluating challenges to the constitutionality of statutes, this court recognizes that the interpretation of statutes is a question of law" subject to de novo review. *In re Blilie*, 494 N.W.2d 877, 881 (Minn.1993).

■ Article I, Section 6 of the Minnesota Constitution states:

In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the county or district wherein the crime shall have been committed, which county or district shall have been previously ascertained by law.

The general venue statute provides: "except as otherwise provided by Rule 24 of the rules of criminal procedure, every criminal cause shall be tried in the county where the offense was committed." Minn.Stat. § 627.01, subd. 1 (1998).[1] However, the legislature has also stated:

The trial of all charges of all criminal and ordinance violations * * * shall be conducted in the municipality where the alleged violation occurred if the court regularly holds session at that location or in another location within the same county as the court designates by rule.

If a municipality is located in more than one county court district, or in more than one county within a county court district, the county in which the city hall of the municipality is located determines the county or county court district in which the municipality shall be deemed located for the purposes of sections 487.01 to 487.38 provided, however, that the municipality by ordinance enacted may designate, for those purposes, some other county or district in which a part of the municipality is located.

Minn.Stat. § 487.21, subds. 3, 4 (1998). As a matter of law, this statute designates "the county in which trial will occur when a municipality is in more than one county." *County of Benton v. County of Stearns*, 503 N.W.2d 519, 522 (Minn.App.1993), *review denied* (Minn. Sept. 21, 1993). The supreme court has recognized that "the legislature must have some room to expand upon the constitutional provisions relating to venue." *State v. Krejci*, 458 N.W.2d 407, 410–11 (Minn.1990) (noting that if a state has jurisdiction over the crime, than determination of the precise county for trial is less significant). When a crime implicates more than one county, the constitution does not command a single exclusive venue. *Id.* at 410. Accord-

---

1. Minn. R.Crim. P. 24.01 similarly provides: "The case shall be tried in the county where the offense was committed except as otherwise provided by these rules."

**870**

ingly, we conclude that Minn.Stat. § 487.21 does not violate Article I, Section 6 of the Minnesota Constitution. The statute merely clarifies in which county a trial is to be held when a municipality in which the offense occurred is located in more than one county. In this case, Wolf was arrested in the city of St. Cloud, which lies within three counties: Benton, Sherburne, and Stearns. The St. Cloud City Hall is located in Stearns County. The case was properly venued in Stearns County.

## DECISION

The district court did not abuse its discretion in limiting the testimony of Wolf's expert witness and properly determined that the case was properly venued in Stearns County.

**Affirmed.**