STATE of Minnesota, Respondent,

v.

Ricky Wayne WOLF, Petitioner.

No. C0–98–1491.

Supreme Court of Minnesota.

Jan. 27, 2000.

Michael L. Samuelson, St. Cloud, for petitioner.

Jan Peterson, St. Cloud City Atty., Michael J. Lieberg, St. Cloud Asst. City Atty., St. Cloud, for respondent.

## OPINION

GILBERT, Justice.

Appellant Ricky Wayne Wolf challenges the district court limitations on his expert testimony and the venue of his trial relating to his arrest and conviction for gross misdemeanor driving under the influence of alcohol and driving with a blood alcohol level over the statutory limits.

On October 21, 1996, Wolf was stopped by a Minnesota State Trooper in a part of the City of St. Cloud located in Benton County, Minnesota. The trooper followed Wolf and stopped him after observing his car swerving over the center and fog lines when driving east on Highway 23. While questioning Wolf, the trooper could smell "the strong odor" of alcohol from the interior of Wolf's car. The trooper also noticed that Wolf's eyes were bloodshot and his speech slightly slurred. The trooper asked Wolf if he had been drinking and Wolf replied that he had consumed about three or four beers. The trooper then administered field sobriety tests to Wolf, which he failed. During this time, another trooper arrived and administered a Portable Breath Test to Wolf, which resulted in a "fail" in 11 seconds. Wolf was arrested and transported to the Benton County Jail.

At the jail, another breath test indicated that Wolf's blood alcohol level was 0.14. The trooper then issued Wolf a Notice and Order of Driver's License Revocation, a tab complaint, and advised him that the St. Cloud City Attorney would mail him a summons for gross misdemeanor driving under the influence of alcohol and alcohol content over 0.10.

The St. Cloud City Attorney filed charges against Wolf in Stearns County District Court. The City of St. Cloud is located within three counties: Stearns, Benton and Sherburne, with its city hall in Stearns County. The St. Cloud City Attorney's office is responsible for prosecuting misdemeanors and gross misdemeanors committed within the city limits. Minnesota Statutes § 487.21, subd. 4

(1998) places proper venue for crimes committed in a city that is located in one or more counties in the county where the city hall is located, or where otherwise determined by ordinance.

Prior to trial, Wolf challenged venue and asserted that because his arrest and the events leading to his arrest all occurred in Benton County, the proper venue for trial was Benton County. The trial court denied the motion citing Minn.Stat. § 487.21, subd. 4.

After Wolf provided the court and the city attorney with a copy of his witness list, there was an exchange of letters between the parties and the court concerning the testimony of Wolf's expert witness. During this exchange, Wolf sent the court a copy of his expert's resume and stated that his expert might testify to the operation, maintenance, operator training and reliability of infrared breath testing and specifically the Intoxilyzer 5000 (the unit that the trooper used in this case). Wolf further stated that his expert might also testify to "anomalous situations that might affect the accuracy and reliability of the Intoxilyzer," to "the affect [sic] of alcohol consumption on the result of a breath test, and upon the human body," as well as to the "Widmark" formula. We note that the record does not indicate any other specific information concerning the methodology that Wolf's expert would employ in forming his opinions.

After receiving several letters from both parties, the court decided to treat the matter as a motion in limine by the city attorney to exclude Wolf's expert. After receiving Wolf's responsive memorandum, the court denied the city attorney's motion. However, in the court's supporting memorandum it stated that Wolf's expert would not be permitted to "introduce theories of malfunctions" concerning the Intoxilyzer, "without evidence in the record to raise an inference, let alone prove, that there was a false reading in this case." The court also stated that it would not allow Wolf's expert to testify to the "Widmark" formula or

other "extrapolation" testimony because, in this case, the "potential for unfair prejudice outweighs the probative value of [such] testimony."

On the eve of the January 1998 trial date, Wolf waived his right to a jury trial and submitted this case to the court on stipulated facts in accordance with our decision in *State v. Lothenbach,* 296 N.W.2d 854, 858 (Minn.1980). At the trial, the court admitted the stipulated facts consisting of 14 pages and included the tab complaint, the trooper's field report, intoxification field report, Intoxilyzer test and maintenance records, and a copy of Wolf's implied consent advisory, order of revocation and prior conviction. The court also noted that if a jury trial had been held that the jury would have been drawn from residents of Stearns County. Following trial, the court issued its findings of fact and conclusions of law and order. In its findings, the court noted that Wolf admitted driving the vehicle, that he failed the field sobriety tests and that his blood alcohol concentration was 0.14. The court also found that Wolf had one prior conviction for driving under the influence of alcohol. Based on these findings, the court found Wolf guilty of violating Minn.Stat. § 169.121, subd. 1(a),(d),(e) and subd. 3(c) (1998).

Wolf timely filed a notice of appeal. The court of appeals affirmed the judgment of the district court. *See State v. Wolf,* 592 N.W.2d 866, 870 (Minn.App. 1999). On the question of the admissibility of the expert testimony, the court of appeals concluded that the limitations the district court placed on Wolf's expert were not an abuse of discretion. *See id.* at 869. On the question of venue, the court held that Minn.Stat. § 487.21 is constitutional as a valid exercise of the legislature's power to determine venue of criminal matters that implicate more than one county. *See id.* at 869–70. We affirm.

## I.

Wolf argues that the district court's order limiting his expert's testimony was an abuse of discretion and infringed on his right to present a complete defense.

■ A criminal defendant has the right to be treated with fundamental fairness and "afforded a meaningful opportunity to present a complete defense." *State v. Richards,* 495 N.W.2d 187, 191 (Minn. 1992) (quoting *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)); *accord* U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7. However, the accused must comply with the established rules of evidence designed to assure both fairness and reliability in ascertaining guilt or innocence. *See Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *accord State v. Profit,* 591 N.W.2d 451, 463 (Minn.1999). "The admissibility of expert testimony has generally rested in the discretion of the [district] court." *State v. Greenleaf,* 591 N.W.2d 488, 504 (Minn. 1999). As this is an appeal from a judgment of conviction and of a district court's ruling on the admissibility of evidence at trial, we review for an abuse of the district court's discretion. *See State v. Griller,* 583 N.W.2d 736, 742–43 (Minn.1998) (noting that rulings on admissibility of evidence rest within the sound discretion of the trial court).

■ Minnesota Rule of Evidence 702 governs the admission of scientific or technical expert testimony and states that such testimony is admissible if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* It is then the district court's responsibility to "scrutinize the proffered expert testimony as it would other evidence and exclude it where irrelevant, confusing, or otherwise unhelpful." *State v. Miles,* 585 N.W.2d 368, 371 (Minn.1998).

■ Our analysis of whether the limitations placed on Wolf's expert were proper is hampered by the lack of an offer of proof made at trial as to what expert testimony Wolf intended to introduce. We

can only make determinations of error based on the trial record, in this case the stipulated facts. *See State v. Lee,* 494 N.W.2d 475, 479 (Minn.1992). We have held that a party fails to preserve for appeal a ruling excluding evidence when that party fails to make an offer of proof showing the nature of the evidence excluded. *See id.* Minnesota Rules of Evidence 103(a)(2) provides that error may not be predicated on an exclusionary ruling unless there is an offer of proof made or the substance of the evidence is apparent from the context of the questioning.

■ The district court made two key statements in its order concerning Wolf's expert. First, the court stated that Wolf's expert would not be permitted to "introduce *theories*" of malfunctions with the breathalyzer that were not supported by some facts in the record. (Emphasis in original). On its face, this ruling does little more than state the rule that expert testimony must be based on something more than "mere speculation or conjecture." *State Farm Fire & Cas. Co. v. Wicka,* 474 N.W.2d 324, 332 (Minn.1991). In the absence of an offer of proof indicating otherwise, this ruling was not an abuse of the court's discretion.

■ The second statement in the district court's order stated that it would not allow Wolf's expert to testify on the "Widmark" formula or any other "extrapolation" testimony, stating that "[t]he potential for unfair prejudice outweighs the probative value of extrapolation testimony in this case." Such a ruling under Minn. R. Evid. 403 is within the court's discretion. Generally, retrograde extrapolation involves multiplying the alcohol elimination rate by the number of hours between the incident and the blood alcohol test, adding that to the test reading and then subtracting any unabsorbed alcohol at the time of the incident. *See generally State v. Jensen,* 482 N.W.2d 238, 239 (Minn. App.1992), *rev. denied* (Minn. May 15, 1992). Lower courts have allowed such evidence when based on a proper founda-

tion. *See id.* at 240. Again, we have no appropriate offer of proof from which to make a determination whether the court's exclusion of such evidence was a proper exercise of discretion. The record, as stipulated to by both parties at trial, does not contain all the information necessary to conduct retrograde blood alcohol level calculations. The record does not contain such basic information as when Wolf last consumed alcoholic beverages, the amount and type of alcohol consumed, or even his accurate height and weight at the time of arrest. In the absence of an offer of proof and on the stipulated record, we cannot conclude that the district court's ruling was an abuse of its discretion concerning the admissibility of evidence.

■ Additionally, Wolf argues that the limitations placed on his expert's testimony by the district court were improper in a motion in limine because a defendant need not present any defense until the prosecution has presented a prima facie case. We find this argument unpersuasive. The prosecution's burden of proof did not relieve Wolf of his obligation to preserve his objections for appeal by offer of proof. We also note that it was unlikely that this would have required Wolf to disclose any more of his case than the disclosure rules of criminal procedure already require. *See generally* Minn. R.Crim. P. 9.02. We affirm the court of appeals.

## II.

Wolf argues on appeal that because his arrest and all the events leading up to his arrest occurred in Benton County, he was entitled to a trial in Benton County under Article I, Section 6 of the Minnesota Constitution. The venue for Wolf's trial was set in Stearns County, the county wherein St. Cloud's city hall is located. This trial location was selected pursuant to Minn. Stat. § 487.21, subd. 4, which determines the venue for crimes committed within a municipality that is located in more than one county. Wolf claims the application of

this statute to set his trial in Stearns County violated Article I, Section 6 of the Minnesota Constitution.

 Because this issue involves the determination of purely legal questions, whether a statute is constitutional and the proper construction of a constitutional provision, we review each of these questions de novo. *See State v. Chambers,* 589 N.W.2d 466, 479 (Minn.1999). The party challenging a statute must demonstrate beyond a reasonable doubt that the statute violates some provision of the Minnesota Constitution. *See Boutin v. LaFleur,* 591 N.W.2d 711, 714 (Minn.1999). We will avoid any constitutional question except with reference to the particular facts to which it is to be applied. *See Striebel v. Minnesota State High Sch. League,* 321 N.W.2d 400, 402 (Minn.1982).

Article I, Section 6 of the Minnesota Constitution states:

> In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the county or district wherein the crime shall have been committed, which county or district shall have been previously ascertained by law.

Both Benton and Stearns Counties are located in the Seventh Judicial District. Article I, Section 6 states that the accused shall enjoy a trial in the "county or district wherein the crime shall have been committed." While the application of section 487.21, subd. 4 to these facts sets venue in a different county from where the crime was committed, it did not move it to another district.

 Wolf argues that the drafters of Minnesota's Constitution did not intend the term "district" to mean an area greater than "county." However, such a reading is not supported by a plain reading of the constitution and is inconsistent with our earlier holdings on this question. Article I, Section 6 providing for a trial in the "county" or "district" has remained unchanged since statehood. *See* Minn.

Const. art. I, § 6 (1857). Contemporaneous to its adoption, Article VI, Section 4 was also passed dividing the state into six judicial districts. *See* Minn. Const. art. VI, § 4 (1857). At the same time the state contained 47 counties. *See* Minn. Const. art. XV, § 14 (1857) (assigning the 47 counties by name to the six judicial districts). The Minnesota Constitution's use of the terms "county" or "district" implies two different but acceptable geographic areas in which trials may be set and juries drawn.

Our early decisions dealing with venue also addressed the county/district dichotomy. Shortly after statehood, in *State v. Gut,* we addressed the question of whether a murder trial could be moved from Brown County, where the crime was committed, to Redwood County, an adjacent county in the same judicial district. *See* 13 Minn. 341, 348 (Gil. 315, 322) (1868). At that time, by law, all trials for the district were held in Redwood County. *See id.* at 348 (Gil. 320). In response to the defendant's challenge that this violated his right to a trial in the county were the crime was committed under Article I, Section 6, we replied: "We are unable here to discover any conflict. The law does not change the district, but merely the place of trial in the district—which is not forbidden." *Id.* at 348 (Gil. 322). We later reaffirmed the analysis in *Gut,* noting that we could "perceive no reason why the word 'district' may not properly be held to designate an area larger or smaller than a county." *State v. Kemp,* 34 Minn. 61, 62, 24 N.W. 349, 350 (1885).

 Wolf's situation is no different. The place of his trial was merely moved by operation of Minn.Stat. § 487.21, subd. 4 from one county in the Seventh Judicial District to another. As we have held, such a move is not forbidden by Article I, Section 6 of the Minnesota Constitution. Accordingly, we hold that the application of Minn.Stat. § 487.21, subd. 4 to set venue for Wolf's trial in Stearns County did not

violate Article I, Section 6 of the Minnesota Constitution.

 Finally, Wolf argues that Minn. R.Crim. P. 24.01 requires that his trial should have been held in Benton County. Rule 24.01 states that, "except as otherwise provided by these rules[,]" a criminal trial shall be held "in the county where the offense was committed." Minn. R.Crim. P. 24.01. Minnesota Statutes § 487.21, subd. 4, as applied in this case, appears to be in conflict with Rule 24.01. Wolf argues that Rule 24.01 therefore supersedes Minn.Stat. § 487.21. We are not persuaded by this argument. While retaining our inherent rule-making authority over the courts and their procedures, we have deferred to limited legislative involvement in procedural matters, however our deference is that of comity. *Cf. Nicollet Restoration, Inc., v. Turnham,* 486 N.W.2d 753, 756 (Minn.1992). With regard to special needs relating to venue, within constitutional limitations, we have approved of a venue statute that sets venue for certain child abuse matters in the county where the abuse occurred or in whatever county the child was found. *See State v. Krejci,* 458 N.W.2d 407, 410–11 (Minn.1990) (citing Minn.Stat. § 627.15 (1988)). We concluded in *Krejci* that the statute was constitutional and did not conflict with Rule 24.01. *See id.* at 411, 412, n. 6.

Municipalities that are located in multiple counties present special needs relating to trial venue. We incorporated Minn. Stat. § 627.07 (1971) in the rules of criminal procedure to address similar issues concerning venue arising from crimes alleged to have been committed along county lines. *See* Minn. R.Crim. P. 24.02, subd. 2 (setting venue for crimes occurring within 1500 feet of a county line in either of the adjacent counties). Minnesota Statutes § 487.21, subd. 4 addresses problems of venue that arise in the context of a municipality that is located in more than one county. It establishes venue for crimes committed in that municipality to be either in the county where the city hall is located or in some other county in which part of the municipality is located, if so designated by municipal ordinance. *See* Minn.Stat. § 487.21, subd. 4 (1998).

Acknowledging the need for special venue provisions for municipalities that are located in more than one county and the absence of such provisions in our rules, we hold as a matter of comity that to the extent Minn.Stat. § 487.21, subd. 4 conflicts with Rule 24.01, it nevertheless may be applied in the circumstance presented here.

Affirmed.