STATE OF MINNESOTA

IN SUPREME COURT

A24-0216

Original Jurisdiction

Ken Martin,

Petitioner,

vs.

Steve Simon, Minnesota Secretary of State,

Respondent,

The Legal Marijuana Now Party,

Intervenor-Respondent.

Per Curiam
Took no part, Chutich, Procaccini, JJ.

Filed: May 10, 2024
Office of Appellate Courts

_____

Charles N. Nauen, David J. Zoll, Rachel A. Kitze Collins, Lockridge Grindal Nauen PLLP, Minneapolis, Minnesota, for petitioner.

Keith Ellison, Attorney General, Nathan J. Hartshorn, Jon M. Woodruff, Assistant Attorneys General, Saint Paul, Minnesota, for respondent Steve Simon, Minnesota Secretary of State.

Erick G. Kaardal, Mohrman, Kaardal & Erickson, P.A., Minneapolis, Minnesota, for intervenor-respondent Legal Marijuana Now Party.

_____

1.      The court has subject matter jurisdiction over this petition under Minn. Stat. § 204B.44 (2022).

2.      Because the Legal Marijuana Now Party (LMNP) did not maintain a state central committee subject to the state convention's control, as Minn. Stat. § 202A.12, subd. 2 (2022), requires, and the LMNP's constitutional challenge to Minn. Stat. § 202A.12, subd. 2, fails, the LMNP has not satisfied the requirements to be a major political party under Minn. Stat. § 200.02, subd. 7(a) (Supp. 2023).

Petition granted; motion to dismiss denied.

O P I N I O N

PER CURIAM.

Petitioner Ken Martin, the chair of the Democratic-Farmer-Labor Party (DFL), filed a petition under Minnesota Statutes section 204B.44 (2022), asking us to decertify the Legal Marijuana Now Party (LMNP) as a major political party and to order that the LMNP's candidates for partisan offices cannot use the ballot access procedures for major political parties in the 2024 state primary and general elections.  The petition alleged that, notwithstanding the LMNP's certification to Secretary of State Steve Simon under a recently amended state law that it meets the statutory requirements for a major political party, the LMNP had failed to comply with certain requirements for major political parties.  According to the petition, the LMNP is not a major political party because it failed to comply with provisions in Minnesota Statutes sections 202A.12 (2022) and 202A.13

(Supp. 2023) concerning the establishment of a state central committee and a state executive committee and providing for local conventions and local committees.

We referred these issues to a referee, who held an evidentiary hearing and concluded that the LMNP had failed to meet the requirements to be a major political party enumerated in sections 202A.12 and 202A.13. The LMNP objects to these findings and argues that sections 202A.12 and 202A.13 unconstitutionally infringe upon its First Amendment associational rights. The LMNP also filed a motion to dismiss the petition for failure to comply with the candidate-service requirement under section 204B.44.

Because we conclude that there were no candidates upon whom to serve the petition, we deny the LMNP's motion to dismiss. On the merits, we start and stop our analysis with the first statutory provision at issue, that "[s]ubject to the control of the state convention the general management of the affairs of the state party is vested in the party's state central committee." Minn. Stat. § 202A.12, subd. 2. We adopt the referee's factual findings regarding this provision and conclude that the LMNP failed to comply with section 202A.12, subdivision 2, because its single committee, The Head Council, is not subject to the control of the LMNP's state convention. Instead, The Head Council has final authority over all party decisions. We also reject the LMNP's constitutional challenge to section 202A.12, subdivision 2. The LMNP only makes broad assertions about the burdens on its associational rights and fails to argue or otherwise demonstrate how any of the purported burdens imposed upon it are specifically caused by the requirements in section 202A.12, subdivision 2. Given that the United States Supreme Court has both credited that a legitimate state interest "is served by a state statute requiring that a

3

representative central committee be established" and upheld a law requiring that the state convention governed over the state central committee, *Marchioro v. Chaney*, 442 U.S. 191, 193–94, 196 (1979), the LMNP's constitutional argument against section 202A.12, subdivision 2, fails. Accordingly, we hold that the LMNP does not meet all the statutory requirements to maintain its status as a major political party for purposes of the state primary election in August 2024 and the state general election in November 2024.

## FACTS

Before we turn to the facts, some background about the different types of political parties in Minnesota will be helpful to understand the legal issues presented by this case.

Minnesota's election law recognizes political parties. A "political party" is simply defined as "an association of individuals under whose name a candidate files for partisan office." Minn. Stat. § 200.02, subd. 6 (2022). The law further provides for major political parties and minor political parties. Minn. Stat. § 200.02, subd. 7 (Supp. 2023) (major political parties); Minn. Stat. § 200.02, subd. 23 (2022) (minor political parties). For a partisan office other than presidential elector, candidates of a major political party receive a place on the ballot by filing an affidavit of candidacy, with nomination as the party's candidate in the general election then sought through a primary election.[1] *See* Minn. Stat. §§ 204B.03, 204D.10, subd. 1 (2022). In contrast, all other candidates for a partisan office, including minor political party candidates, must be nominated by petition, which requires

---

[1] The chair of each major political party "certif[ies] to the secretary of state the names of the persons nominated as presidential electors, the names of persons nominated as alternate presidential electors, and the names of the party candidates for president and vice president." Minn. Stat. § 208.03 (2022).

4

obtaining a certain number of signatures before appearing on the general election ballot. Minn. Stat. § 204B.03. In addition, both major and minor political parties can participate in certain tax-generated subsidy programs. *See* Minn. Stat. §§ 10A.31 (2022 & Supp. 2023), 290.06, subd. 23 (Supp. 2023); *see also Begin v. Ritchie*, 836 N.W.2d 545, 546 (Minn. 2013). Additional subsidies are available only to major political party candidates. Minn. Stat. § 10A.31, subd. 7 (2022). Major political parties, likewise, have their party name protected from being used by a candidate of another political party on the ballot. Minn. Stat. § 202A.11, subd. 2 (2022).

To qualify as a major political party, a political party must present a certain number of candidates for certain offices at a state general election or have a candidate for a specific office receive a certain percentage of voter support in a state general election.[2] Minn. Stat. § 200.02, subd. 7(b). The law generally provides that a political party meeting either of these requirements to be a major political party retains that status for at least two state general elections. *Id.*, subd. 7(c). A party can lose that status if it fails to meet these requirements "at each of two consecutive state general elections." *Id.*, subd. 7(d).

Minnesota has had laws addressing conventions and committees of major political parties since 1981, when the Legislature added the term "major political party" to the defined terms in Minnesota's election law.[3] Act of Apr. 14, 1981, ch. 29, art. 1, § 3, 1981

---

[2] A party can also qualify as a major political party by "presenting . . . a petition for a place on the state partisan primary ballot" signed by enough party members. Minn. Stat. § 200.02, subd. 7(b)(3).

[3] Minnesota Statutes sections 202A.12 and 202A.13 were enacted in 1975, Act of Feb. 28, 1975, ch. 5, §§ 3–4, 1975 Minn. Laws 4, 5, but these requirements go as far back

Minn. Laws 38, 40 (codified as amended at Minn. Stat. § 200.02, subd. 7 (Supp. 2023)). Minnesota Statutes section 202A.12 states, in part, that the final authority of each major political party is vested in the party's state convention, to be held at least once every state general election year, and that "[s]ubject to the control of the state convention the general management of the affairs of the state party is vested in the party's state central committee." Minn. Stat. § 202A.12, subds. 1–2. Before the Legislature amended the statute in 2023, section 202A.13 stated that "[t]he rules of each major political party shall provide" for local conventions at least once every state general election year for each congressional district, county, and legislative district. Minn. Stat. § 202A.13 (2022). It also stated that each major political party likewise must generally provide a local executive committee for each congressional district, county, and legislative district. *Id.*

In 2023, the Legislature amended some of the State's election statutes. Minnesota Statutes section 202A.12 was not amended. The provisions in section 202A.13 either remained the same or were lightened. For section 202A.13, the specified number of local conventions and executive committees was reduced. Instead of referring to a local convention and local executive committee "for each congressional district and each county or legislative district," Minn. Stat. § 202A.13 (2022), the statute now refers to a local

---

as 1959. *See* Act of Apr. 24, 1959, ch. 675, art. 3, §§ 20–21, 1959 Minn. Laws 1119, 1142–43 (codified at Minn. Stat. §§ 202.20–202.21 (1961)) (repealed 1975). Prior to 1981, when the Legislature added the term "major political party" to Minnesota's election law, these requirements applied to a "political party." *See* Minn. Stat. §§ 202A.12–202A.13 (1980).

6

convention and local executive committee "for each congressional district and at least 45 counties or legislative districts," Minn. Stat. § 202A.13 (Supp. 2023).

The 2023 amendments, however, also for the first time made "major political party" status dependent on compliance with the requirements of sections 202A.12 and 202A.13. *See* Minn. Stat. § 200.02, subd. 7(a). While still requiring a certain number of candidates for specific offices or a candidate for a specific office who receives a certain percentage of votes, Minn. Stat. § 200.02, subd. 7(b),[4] the definition of "major political party" in section 200.02, subd. 7(a), now provides:

> "Major political party" means a political party that maintains a party organization in the state; *has complied with the party's constitution and rules; is in compliance with the requirements of sections 202A.12 and 202A.13; files with the Secretary of State no later than December 1 of each odd-numbered year a certification that the party has met the foregoing requirements, including a list of the dates and locations of each convention held; and meets all other qualification requirements of this subdivision.*

(Emphasis added to reflect language added by the 2023 amendments.)[5]

These new amendments are what gave rise to this petition. The LMNP first qualified as a minor political party after the 2014 state general election when its candidate received 2.99 percent of the vote for attorney general and first qualified as a major political party in 2018 after its candidate received 5.28 percent of the vote for state auditor. The

---

[4]     The 2023 amendments also increased the percentage of votes required, starting with the 2024 general election, from 5 percent to 8 percent. Minn. Stat. § 200.02, subd. 7(b)(1)(ii).

[5]     If a party was "recognized as a major political party" on May 25, 2023, then it had to affirm in its December 1, 2023 certification "that the party was in compliance with paragraph (a) during" 2022. Act of May 24, 2023, ch. 62, art. 4, § 9, 2023 Minn. Laws 2452, 2560–61.

LMNP then maintained its major political party status when its candidate received 5.92 percent of the vote for U.S. Senator in the 2020 state general election. The LMNP, DFL, and Republican Party of Minnesota are the only political parties in Minnesota currently recognized as major political parties.

On October 18, 2023, and again on November 8, 2023, the Secretary of State's general counsel notified the LMNP of the December 1, 2023 certification deadline under the 2023 amendments to retain major political party status. The LMNP responded, but the Secretary of State found these early responses to be an insufficient certification of compliance with the requirements under the 2023 amendments. After various back-and-forth communications, on December 5, 2023, the Secretary of State advised the LMNP that his office had determined that the LMNP had complied with the statutory requirements and would retain its status as a major political party.

On February 6, 2024, Ken Martin, a registered voter and chair of the DFL, filed this petition with our court under section 204B.44. The petition claimed that the LMNP failed to satisfy the requirements to retain its status as a major political party because it did not have the statewide structure required by section 202A.12 nor the local structure required by section 202A.13. The petition alleged that the Secretary of State's decision—to certify the LMNP as a major political party notwithstanding its failure to comply with these requirements—was a "wrongful act, omission, or error" by the Secretary of State for which recourse could be sought under a section 204B.44 petition. The petition sought an order declaring that the LMNP is not a major political party and ordering the Secretary of State to not allow LMNP candidates to appear on the ballots for the 2024 state primary and

8

general elections using the procedures available for candidates for partisan office who seek the nomination of a major political party.

After receiving responses to the petition from the Secretary of State and the LMNP as well as other briefing, we concluded that we have jurisdiction over this matter under section 204B.44, granted the LMNP's motion to intervene, and appointed Hennepin County District Court Judge Edward T. Wahl as referee. *Martin v. Simon*, No. A24-0216, Order at 3–4 (Minn. filed Mar. 1, 2024). We authorized the referee to "determine all facts relevant to, issue conclusions of law regarding, and make recommendations as to the disposition of" three issues: (1) whether the LMNP "has the committees required by Minn. Stat. § 202A.12 (2022)"; (2) whether the LMNP "has 'provide[d] for each congressional district and at least 45 counties or legislative districts an executive committee consisting of a chair and such other officers as may be necessary,' as required by Minn. Stat. § 202A.13 (Supp. 2023)"; and (3) whether the LMNP "held, in 2022, the conventions for each congressional district and at least 45 counties or legislative districts, as required by Minn. Stat. § 202A.13." *Martin*, Order at 4 (alteration in original).

The referee held an evidentiary hearing on March 11, 2024. He issued his findings of fact, conclusions of law, and recommendations on March 20, 2024, finding against the LMNP on all three issues and recommending that the LMNP be declared to not meet the statutory requirements to maintain its status as a major political party. The LMNP objected to the referee's findings of fact, conclusions of law, and recommendations, including raising a constitutional challenge to sections 202A.12 and 202A.13. The LMNP also filed a separate motion to dismiss, claiming that we lack subject matter jurisdiction due to an

9

alleged failure by Martin to comply with a service requirement in section 204B.44. Martin filed responses in opposition to the LMNP's arguments. The Secretary of State also filed a response, limited to defending the constitutionality of the challenged laws.

## ANALYSIS

Before us are the objections of the LMNP to the referee's findings of fact, conclusions of law, and recommendations, as well as the LMNP's constitutional arguments and motion to dismiss. When we refer a section 204B.44 petition to a referee to make findings of fact, we "defer to the findings of the referee who heard the witnesses testify." *Piepho v. Bruns*, 652 N.W.2d 40, 45 (Minn. 2002) (per curiam); *see also Lundquist v. Leonard*, 652 N.W.2d 33, 37 (Minn. 2002) (per curiam) (stating that "because the record support[ed] the referee's conclusions" about the candidate's intent to establish residency in a legislative district and the actions she took to establish residency there, we would not "disturb the findings"). We have also explained that "[i]t is the role of the referee, and not this court, to evaluate the credibility of witnesses." *Lundquist*, 652 N.W.2d at 37. Issues of statutory interpretation, however, like questions involving the constitutionality of a statute and subject matter jurisdiction, are legal issues we review de novo. *See Schatz v. Interfaith Care Ctr.*, 811 N.W.2d 643, 649, 653 (Minn. 2012); *Daniel v. City of Minneapolis*, 923 N.W.2d 637, 644 (Minn. 2019).

10

I.

Assessing our subject matter jurisdiction is a threshold issue that we consider first.[6] After the referee issued his findings of fact, conclusions of law, and recommendations, the LMNP filed a motion to dismiss, contending that we lack subject matter jurisdiction because Martin did not comply with the service requirement for candidates in section 204B.44. Martin opposed the motion, arguing there were no candidates that he could have served.

Minnesota Statutes section 204B.44(b) requires that "[t]he petitioner shall serve a copy of the petition on the officer, board or individual charged with the error, omission, or wrongful act, *on all candidates for the office in the case of an election for state, federal, county, municipal, or school district office*, and on any other party as required by the court." (Emphasis added.) We need not resolve in this case whether a petitioner under section 204B.44 must serve all candidates for office at the commencement of the action for a court to have subject matter jurisdiction over the petition.[7] Instead, the LMNP's argument

---

[6]     By order, we addressed a different jurisdictional issue and concluded that "[t]he claims in the petition fall within the scope of section 204B.44 and have been properly brought before this court." *Martin v. Simon*, No. A24-0216, Order at 3 (Minn. filed Mar. 1, 2024).

[7]     In *Benda for Common-sense v. Anderson*, the court of appeals addressed a similar issue and concluded that the district court lacked subject matter jurisdiction over the petition in that case because the petitioners did not serve all the candidates on the 2022 Rice County general election ballot. 999 N.W.2d 893, 901 (Minn. App. 2023). That issue was petitioned to our court, and we granted review and stayed further proceedings pending final disposition in *Rued v. Commissioner of Human Services*, No. A22-1420. *Benda for Common-sense v. Anderson*, No. A23-0302, Order (Minn. filed Feb. 28, 2024).

fails because there are not yet any candidates for the elections at issue in the petition for Martin to have served.

The candidate-service requirement in section 204B.44(b) applies "in the case of *an election* for state, federal, county, municipal, or school district office." Minn. Stat. § 204B.44(b) (emphasis added). Based on this language, the candidate-service requirement is limited to candidates for the specific elections at issue in the petition. *See Minn. Majority v. Ritchie*, No. A09-0950, Order at 5 (Minn. filed July 22, 2009) (relying on the phrase "an election" in section 204B.44 to conclude that "[a]t a minimum, the plain language of the statute requires that the claim relate to a duty concerning *a specific election*" (emphasis added)). The specific elections at issue in this petition are the 2024 state primary and general elections.[8] The LMNP has identified no candidate for either of these elections who it claims should have been served and instead argues that candidates from another election—the 2024 presidential nomination primary—should have been served. The motion to dismiss fails on this basis alone.

In addition, the candidate-service requirement applies to "all *candidates for the office* in the case of an election." Minn. Stat. § 204B.44(b) (emphasis added). But at this point, for both the 2024 state primary and general elections, there are not yet candidates for any partisan office. The period to file nominating petitions and affidavits of candidacy

---

[8]     Our February 8, 2024 order specifically directed Martin to "address whether petitioner is seeking any relief related to the 2024 Minnesota presidential nomination primary." *Martin v. Simon*, No. A24-0216, Order at 2 (Minn. filed Feb. 8, 2024). Martin responded, expressly disclaiming that he was seeking any relief as to the 2024 Minnesota presidential nomination primary.

12

will not open until May 21, 2024.  *See* Minn. Stat. § 204B.09, subd. 1(a), 1(c) (2022).  And no chair of any major political party has certified to the Secretary of State the names of the party's candidates for president and vice president.[9]  *See* Minn. Stat. § 208.03 (2022).  With no candidates to serve, Martin did not fail to comply with section 204B.44's candidate-service requirement by not serving the petition on any specific candidates.

## II.

We turn now to the petition itself.  The LMNP does not dispute that under the 2023 amendments to the definition of "major political party" in section 200.02, subd. 7(a), a political party is no longer a major political party if it fails to comply with the requirements of sections 202A.12 and 202A.13.  Instead, the LMNP argues that the *Purcell* principle from federal courts calls for us to refrain from declaring that the LMNP is not a major political party.  Alternatively, on the merits, the LMNP challenges the referee's findings of fact and conclusions of law and argues that sections 202A.12 and 202A.13 are unconstitutional.  We address each argument below.

## A.

The LMNP first suggests that the *Purcell* principle, an evolving federal court abstention doctrine concerning the propriety of judicial interference in election matters, compels this court to stay its hand rather than reach the merits of this case.  According to the LMNP, "[t]he *Purcell* principle should guide this Court by not giving the underlying district court findings and recommendations and the § 204B.44 Petition the effect of

---

[9]     In fact, the LMNP states in its objections that it will hold its national convention and select its candidates for president and vice president in June or July 2024.

13

changing elections [sic] laws on the eve of national conventions" where doing so would be contrary to the ostensible "expectations of voters in the general election." Martin contends the *Purcell* principle has no application to this state court proceeding in which he is asking us to apply Minnesota law.

The *Purcell* principle, the name of which comes from the U.S. Supreme Court's decision in *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam), has been more recently articulated by members of that Court as the principle that "federal courts ordinarily should not enjoin a state's election laws in the period close to an election, and this Court in turn has often stayed lower federal court injunctions that contravened that principle." *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring in grant of applications for stays); *see Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 226 (4th Cir. 2024) (addressing the concurrence in *Milligan* as the operative statement of the *Purcell* principle). But a principle that *federal* courts should not enjoin a *state's* election laws in the immediate lead-up to an election is inapplicable in the context of a section 204B.44 petition, which expressly permits a petition to be filed in *state* court to correct election-related errors that "have occurred or are about to occur." Minn. Stat. § 204B.44(a). As a result, the *Purcell* principle does not preclude us from addressing the merits of Martin's petition.

B.

We thus turn to the merits of the petition. Judge Wahl, as referee, issued thorough and carefully considered findings of fact, conclusions of law, and recommendations, nearly 50 pages in length. After making findings of fact and conclusions of law, he answered in the negative the referred questions: (1) whether the LMNP "has the committees required

14

by Minn. Stat. § 202A.12 (2022)"; (2) whether the LMNP "has 'provide[d] for each congressional district and at least 45 counties or legislative districts an executive committee consisting of a chair and such other officers as may be necessary,' as required by Minn. Stat. § 202A.13 (Supp. 2023)"; and (3) whether the LMNP "held, in 2022, the conventions for each congressional district and at least 45 counties or legislative districts, as required by Minn. Stat. § 202A.13." *Martin v. Simon*, No. A24-0216, Order at 4 (Minn. filed Mar. 1, 2024) (alteration in original). The LMNP, in its objections, challenges those findings and conclusions and also argues that "[t]he statutes at issue, Minn. Stat. § 202A.12, and the first two lines of § 202A.13, are unconstitutional."

Because constitutional issues have been raised, we are mindful of our "general practice," which is "to avoid a constitutional ruling if there is another basis on which a case can be decided." *State v. Bourke*, 718 N.W.2d 922, 926 (Minn. 2006) (quoting *Erlandson v. Kiffmeyer*, 659 N.W.2d 724, 732 n.7 (Minn. 2003)) (internal quotation marks omitted). As a result, we start with the referee's findings and conclusions, since the constitutional issues only need to be reached if the referee's findings and conclusions that the LMNP failed to comply with the statutory requirements for a major political party are confirmed. We observe that adoption and confirmation of the referee's findings that the LMNP failed to comply with any one of the statutory requirements in sections 202A.12 and 202A.13— along with a conclusion that the specific statutory requirement is constitutional—would be a sufficient basis to determine that the LMNP does not qualify as a major political party under section 200.02, subdivision 7(a).

15

1.

We begin with the referee's findings and conclusions regarding the requirement that "[s]ubject to the control of the state convention the general management of the affairs of the state party is vested in the party's state central committee." Minn. Stat. § 202A.12, subd. 2. There is no meaningful dispute as to the plain meaning of this language, and under our well-established principles of statutory interpretation, we apply that plain meaning. *See Larson v. State*, 790 N.W.2d 700, 703 (Minn. 2010). Pursuant to section 202A.12, subdivision 2, a party's state central committee must be subject to the control of the state convention.

Applying this statutory requirement to the LMNP, the referee found that the sole committee provided for in the LMNP constitution, The Head Council, "functions as LMNP's state central committee for purposes of Minn. Stat. § 202A.12, subd. 2." But the referee also concluded that The Head Council is "not subject to the control of the LMNP state convention under the LMNP constitution." The referee found that "[t]he party constitution vests [The Head Council] with the power to make '[a]ll decisions on important organizational and financial subjects, including candidate endorsements.'" (Third alteration in original.) The referee also found that The Head Council has "explicit constitutional authority to override decisions by the party's state convention, including amending the LMNP constitution." The referee concluded that The Head Council retains the ultimate authority over LMNP party affairs and is not subject to the control of the state convention.

16

The LMNP does not challenge that its constitution creates one committee, The Head Council, or that under its party constitution, The Head Council is not subject to the control of the state convention. This is for good reason; the referee's findings fully comport with the language of the LMNP constitution. Rather than making The Head Council subject to the state convention's control, the LMNP constitution provides that "[a]ll decisions on important organizational and financial subjects, including candidate endorsements, must be reached by The Head Council." The LMNP constitution further provides that "[t]his document may be amended by unanimous vote of the entire [Head Council] at any time, or by a two-thirds vote of the members attending the annual convention, except as specified in Article I respecting the party's official name." Thus, instead of The Head Council being subject to the control of the state convention, the inverse is true. The Head Council makes all important decisions for the party, and any amendment to the party constitution by the convention can be overridden by The Head Council acting unanimously.

The LMNP instead argues that "the statutory provision does not state *how* the party is to implement this directive" and further, that there is nothing in the law compelling that the requirements of section 202A.12, subdivision 2, be adopted or reflected in the party's constitution. We do not find persuasive the LMNP's argument that the language of its constitution is irrelevant because section 202A.12 does not require a party's constitution to contain certain language about the authority of its state convention. The fact that section 202A.12 does not require a party's constitution to contain certain language does not mean that the language a party chooses to put in its constitution is irrelevant. This is especially true when the party's constitution contains language inconsistent with the

17

provision in section 202A.12 that the state central committee is subject to the control of the state convention. Moreover, at the evidentiary hearing, LMNP Chair Dennis Schuller admitted that the LMNP constitution is the only form of written rules the party has. As a result, the LMNP constitution is probative as to whether its state convention has final authority over the party's affairs and whether The Head Council is subject to the control of the state convention.

Furthermore, even if we overlook the language of the LMNP constitution, there is no support in the record for the LMNP's claim that the party's state convention has final authority over the party's affairs or that The Head Council is subject to the control of its state convention. The referee found that Schuller's testimony "about matters associated with . . . [LMNP] committees . . . was not credible," and we defer to the referee's credibility determination, *see Lundquist*, 652 N.W.2d at 37. Moreover, even if Schuller's testimony was credited, it does not support the LMNP's claim. Schuller admitted that "The Head Council is not subject to the state convention." Schuller also agreed that if the state convention voted to amend the party's constitution, The Head Council could override that amendment. When Schuller was asked how the LMNP complied with section 202A.12, subdivision 2, Schuller testified that The Head Council fulfilled this requirement, but he provided no explanation how The Head Council is subject to the control of the state convention.

We thus adopt the referee's factual findings about the LMNP's state central committee. We conclude that the LMNP did not comply with the requirement of section 202A.12, subd. 2, because the LMNP's state central committee, The Head Council,

18

retains the ultimate authority over LMNP party affairs and is not subject to the control of the state convention.

2.

Because the LMNP failed to comply with the requirement of section 202A.12, subd. 2, that the state central committee is subject to the control of the state convention, the LMNP fails to satisfy the requirements to be a major political party under section 200.02, subd. 7(a). Thus, we are compelled to declare that the LMNP is not a major political party unless, as the LMNP argues, this requirement is unconstitutional. It is to this issue that we turn, focusing our attention solely on the constitutionality of section 202A.12, subd. 2, notwithstanding the LMNP's broad challenge to the constitutionality of sections 202A.12 and 202A.13 more generally.[10] *See In re Senty-Haugen*, 583 N.W.2d 266, 269 n.3 (Minn. 1998) ("It is well-settled law that courts should not reach constitutional issues if matters can be resolved otherwise.").

The U.S. Supreme Court has recognized that "[t]he First Amendment protects the right of citizens to associate and to form political parties for the advancement of common political goals and ideas." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357 (1997). But "[o]n the other hand, it is also clear that States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Id.* at 358. The LMNP argues that section 202A.12, subdivision 2, is

---

[10] Notably, however, the LMNP, in its objections, does not make any argument that the 2023 amendments to section 200.02, subd. 7(a), are unconstitutional. And when pressed at oral argument, the LMNP disclaimed a challenge to the constitutionality of those amendments. We thus do not consider or pass on that issue.

unconstitutional under the "*Anderson-Burdick* balancing test" established by the Supreme Court to balance these competing interests. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992). "Under this balancing test, we first consider the 'character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments.' " *DSCC v. Simon*, 950 N.W.2d 280, 295 (Minn. 2020) (quoting *Anderson*, 460 U.S. at 789). "We then identify and evaluate the State's 'precise interests' that justify the burden." *Id.* (quoting *Anderson*, 460 U.S. at 789). Different standards of scrutiny then apply depending on the degree of the burden imposed on the party's rights. "State regulations that impose a severe restriction 'must be narrowly drawn to advance a state interest of compelling importance.' " *Id.* (quoting *Burdick*, 504 U.S. at 434). "Lesser burdens, however, trigger less exacting review, and a State's 'important regulatory interests' will usually be enough to justify 'reasonable, nondiscriminatory restrictions.' " *Timmons*, 520 U.S. at 358 (quoting *Burdick*, 504 U.S. at 434); *see also DSCC*, 950 N.W.2d at 295.

We first consider the LMNP's claimed injury to its associational rights. The LMNP cites generally to the Court's decision in *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214 (1989), for the broad principle that "[s]tate laws may not interfere or restrict how a party governs itself." *Eu* recognized that the California laws at issue in that case—which imposed "restrictions on the organization and composition of official governing bodies, the limits on the term of office for state central committee chair, and the requirement that the chair rotate between residents of northern and southern California"— "directly implicate[d] the associational rights of political parties and their members."

20

489 U.S. at 229. But this conclusion, on its own, did not eschew in that case the need for balancing that burden against the state's interests. *See id.* at 231–33. Instead, as the Court explained in *Marchioro v. Chaney*, 442 U.S. 191 (1979) and noted in *Eu*, when party members challenge a statute imposing organizational requirements on a party but fail to "claim that *these statutory requirements* impose any impermissible burdens, we have no occasion to consider whether whatever burdens they do impose are justified by the legitimate state interests served by these requirements." *Marchioro*, 442 U.S. at 197 n.12 (emphasis added); *see Eu*, 489 U.S. at 232 n.22 (discussing *Marchioro*). Thus, in order to raise a valid constitutional challenge, a party must articulate how a specific statutory provision results in a particularized burden on its associational rights.

*Marchioro* is instructive as to what constitutes a burden on a political party's associational rights imposed by the *statute* being challenged, as opposed to a burden imposed by something else. In that case, party members challenged a long-standing Washington statute that "required each major political party to have a State Committee consisting of two persons from each county in the State." 442 U.S. at 192. The Court further observed that "[u]nder both party rules and state law, the State Convention rather than the State Committee is the governing body of the party." *Id.* at 193. On one side of the ledger, the Court credited that "[t]he State's interest in ensuring that [the process of selecting and electing candidates for state and national office] is conducted in a fair and orderly fashion is unquestionably legitimate" and "is served by a state statute requiring that a representative central committee be established, and entrusting that committee with authority to perform limited functions." *Id.* at 196–97. But the Court could not engage in

any balancing of those interests against any burdens to the party members, because "all of the 'internal party decisions' which appellants claim should not be made by a statutorily composed Committee are made not because of anything in the statute, but because of delegations of authority from the Convention itself." *Id.* at 198–99. In other words, to even engage in the constitutional analysis, the asserted burden on associational rights must be one imposed by the specific statute whose constitutionality is being challenged.

Here, none of the LMNP's claimed burdens upon its associational rights are burdens imposed by the statutory requirement that a state central committee be subject to the control of the state convention. *See* Minn. Stat. § 202A.12, subd. 2. Instead of focusing on section 202A.12, subdivision 2, specifically, the LMNP generally claims that sections 202A.12 and 202A.13 burden its associational rights by creating unique disadvantages based on the LMNP's small membership, the fact that its members play a number of roles within the party, and the party's tradition of participatory decision making under its "doobie rules."[11] The requirement in section 202A.12, subdivision 2, that the state central committee be subject to the control of the state convention does not inhibit the LMNP from operating with fewer members, allowing members to perform multiple roles, or adhering to its doobie rules. The same is true for the LMNP's general assertion that "[m]andating when and where a party's committee will meet or how it meets intrudes upon a party's internal affairs." Minnesota Statutes section 202A.12, subdivision 2, says nothing

---

[11] As explained by the LMNP, the party "operates by its 'doobie rules,' " which "is a form of consensus, based upon the . . . tradition of the talking stick, passing [a 'doobie'] along to participants. Everyone has an opportunity to participate and talk in an orderly way."

about when, where, or how a party's state central committee meets, instead only requiring that it be subject to the state convention's control. Similarly, the LMNP broadly argues that sections 202A.12 and 202A.13 "severe[ly] burden" the LMNP's associational rights by limiting its "discretion in how it selects its leaders." But the LMNP fails to advance any argument as to how the provision in section 202A.12, subdivision 2, requiring the central committee to be subject to the control of the state convention—which is entirely silent as to the selection of the party's leaders—somehow burdens the party's associational rights.

In sum, all the burdens claimed by the LMNP are either created by virtue of the party itself or are burdens created by other statutory provisions—whether that be the *other* provisions in sections 202A.12 and 202A.13, or the 2023 amendments to section 200.02, subdivision 7(a)—that we do not reach or were not challenged. Here, the LMNP does "not claim that *these statutory requirements*" found in section 202A.12, subdivision 2—that a state central committee be responsible for general management of the party and subject to the state convention's control—impose any impermissible burdens, so "we have no occasion to consider whether whatever burdens they do impose are justified by the legitimate state interests served by these requirements." *Marchioro*, 442 U.S. at 197 n.12 (emphasis added); *see also Eu*, 489 U.S. at 232 n.22.

Even if we were to assume that the requirement in section 202A.12, subdivision 2, of a state central committee subject to the control of the state convention does impose some burden upon the associational rights of a major political party, under the *Anderson-Burdick* balancing test, any such burden is justified by the state's legitimate interest in fair and

23

orderly elections.[12]  Because the LMNP made no showing that section 202A.12, subd. 2, imposes a *severe* burden, the statute is subject to "less exacting review," and "the State's asserted regulatory interests need only be 'sufficiently weighty to justify the limitation' imposed on the party's rights."[13]  *Timmons*, 520 U.S. at 358, 364 (quoting *Norman v. Reed*, 502 U.S. 279, 288–89 (1992)).  Here, the Supreme Court has already credited that a state has a "legitimate" interest in ensuring that the process by which political parties select and elect candidates for office "is conducted in a fair and orderly fashion," and that this "interest is served by a state statute requiring that a representative central committee be established." *Marchioro*, 442 U.S. at 196.  That is precisely what section 202A.12, subdivision 2, does by requiring a state central committee.[14]  The additional statutory requirement in

---

[12]  The LMNP conceded in its objections that the severity of the burden imposed on its associational rights is a question on which it bears the burden of proof.  *See Democratic Party of Haw. v. Nago*, 833 F.3d 1119, 1124 (9th Cir. 2016).  And the LMNP's arguments that it was prevented from being able to adequately present constitutional affirmative defenses fail.  The LMNP made no showing or offer of proof, either before the referee or this court, as to what additional facts it needed to develop or factual disputes it needed resolved.  *See State v. Wolf*, 605 N.W.2d 381, 385 (Minn. 2000) ("We have held that a party fails to preserve for appeal a ruling excluding evidence when that party fails to make an offer of proof showing the nature of the evidence excluded."); *State v. Myhre*, 875 N.W.2d 799, 806 (Minn. 2016) ("We have also declined to address issues that were raised in a brief to our court, but were not adequately argued or explained.").  Notably, we have previously addressed constitutional challenges in section 204B.44 petitions *without* a referral to a referee.  *See De La Fuente v. Simon*, 940 N.W.2d 477, 486–97 (Minn. 2020) (per curiam) (rejecting three constitutional challenges to procedures established by Minn. Stat. § 207A.13 (2020) for the presidential nomination primary).

[13]  Because the LMNP failed to show that section 202A.12, subdivision 2, imposes any burden upon its associational rights, we have no occasion to consider, and do not address, whether that statutory section could withstand a higher level of scrutiny.

[14]  The requirement in section 202A.12, subdivision 2, that a party establish a central committee, also serves an important public purpose by helping "provide the means by

24

section 202A.12, subdivision 2, that the state central committee be subject to the control of the state convention is likewise constitutionally permissible under this less exacting degree of scrutiny. The primacy placed on the convention is entirely consistent with the requirement upheld in *Marchioro*, where the Court highlighted that Washington law made the state convention rather than the state central committee the party's governing body. *See* 442 U.S. at 193–94. And ensuring that the state convention has authority over the state central committee also helps further the recognized state interest "to assure that intraparty competition is resolved in a democratic fashion." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 572 (2000).

In sum, the LMNP has failed to articulate any burden, much less a severe burden, upon its associational rights that is specifically created by the requirements in section 202A.12, subd. 2. As such, to the extent there is any balancing for this court to

which government officials can determine the identity of the legal representatives of political parties." *Ariz. Libertarian Party v. Schmeral*, 28 P.3d 948, 952 (Ariz. Ct. App. 2001). Other election-related statutes, whose constitutionality is not being questioned by the LMNP, demonstrate why Minnesota election officials need to know who has the authority to act on behalf of a major political party. Some statutes specifically reference the role of the state central committee with respect to elections. *See* Minn. Stat. §§ 208.03 (nomination of presidential electors and alternates), 202A.155 (2022) (reimbursement of interpreters), 202A.18, subd. 4 (2022) (announcement and certification of election results), 202A.11, subd. 1 (2022) (party name). Even where the state central committee is not explicitly referenced by a statute, the State has an interest in knowing who can speak for the party because statutes provide that major political parties perform duties or have privileges with respect to elections. *See* Minn. Stat. §§ 204B.21, subd. 1 (2022) (requiring each major political party "[o]n May 1 in a year in which there is an election for a partisan political office" to provide the Secretary of State with a list of election judges), 204C.07, subd. 1 (2022) (authorizing "the chair of an authorized committee of each major political party" to appoint voters from that party "to act as challengers of voters at the polling place"), 204B.13, subd. 2 (2022) (authorizing a major political party to fill a vacancy in nomination for a partisan office).

25

conduct, under the *Anderson-Burdick* test the LMNP invokes, section 202A.12, subdivision 2, survives the LMNP's constitutional challenge.

\* \* \*

Having concluded that the LMNP failed to maintain a state central committee subject to the state convention's control, as required by section 202A.12, subdivision 2, and having upheld subdivision 2 against the LMNP's constitutional challenge, we thus hold that the LMNP has failed to satisfy the requirements to be a major political party under section 200.02, subdivision 7(a).

Accordingly, based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. The petition of Ken Martin, filed pursuant to Minn. Stat. § 204B.44, is granted.

2. The Legal Marijuana Now Party does not meet all the statutory requirements set forth in Minn. Stat. § 200.02, subd. 7, and Minn. Stat. § 202A.12 to maintain its status as a major political party for purposes of the state primary election in August 2024 and the state general election in November 2024.

3. The Secretary of State must take all appropriate actions necessary to reflect that the Legal Marijuana Now Party is not a major political party in Minnesota for purposes of the state primary election in August 2024 and the state general election in November 2024.

4. The Secretary of State must not allow Legal Marijuana Now Party candidates to appear on the ballot for the 2024 state primary and general elections using the procedures

26

available to candidates for partisan office who seek the nomination of a major political party pursuant to Minn. Stat. § 204B.03 or allow the Legal Marijuana Now Party to designate a presidential candidate using the procedures available to major political parties pursuant to Minn. Stat. § 208.03.

5.      The Secretary of State must consider whether the Legal Marijuana Now Party has met the requirements to be a minor political party in Minnesota.

6.      The motion of the Legal Marijuana Now Party to dismiss the petition for lack of subject matter jurisdiction is denied.

CHUTICH, PROCACCINI, JJ., took no part in the consideration or decision of this case.